**REYNOLDS METALS COMPANY, Plaintiff,**

v.

**COMMONWEALTH GAS SERVICES, INC., Commonwealth Gas Pipeline Corporation, Columbia Gas Transmission Corporation, Defendants.**

Civ. A. No. 87–0446–R.

United States District Court,
E.D. Virginia,
Richmond Division.

March 16, 1988.

Thomas G. Slater, R. Noel Clinard, Michael J. Lockerby, Hunton & Williams, Richmond, Va., William F. Young, James F. Bowe, Jr., Hunton & Williams, Washington, D.C., for plaintiff.

John S. Graham, III, Ann Adams Webster, John D. Epps, Browder, Russell, Morris & Butcher, P.C., Richmond, Va., John E. Beerbower, Cravath, Swaine & Moore, New York City, for defendants.

## MEMORANDUM

MERHIGE, District Judge.

This matter comes before the Court on motions by defendants Commonwealth Gas Services, Inc. ("Services") and Commonwealth Gas Pipeline Corporation ("Pipeline") for judgment on the pleadings or for a dismissal based upon the doctrine of primary jurisdiction and state action, and by defendant Columbia Gas Transmission Corporation ("TCo") for a stay pursuant to the doctrine of primary jurisdiction. The issues have been fully briefed by the parties, oral argument has been afforded, and the matter is ripe for disposition.

In this action, Reynolds Metals Company (Reynolds) challenges the legality under the antitrust laws of the natural gas transportation policies and practices of various subsidiaries of The Columbia Gas System, Inc. ("System"), between July 1983 and July 1986. Reynolds contends that the defendants acted in violation of both the Sherman Act and the Virginia Antitrust Act during that period.

Reynolds' five manufacturing plants in the Richmond area use substantial amounts of natural gas in their operations. TCo owns and operates approximately 18,000 miles of pipeline used for the interstate transportation of natural gas. TCo delivers gas to the intrastate pipeline owned and operated by Pipeline at an interconnection in western Virginia. Pipeline in turn delivers natural gas to several local distribution company ("LDC") pipeline systems, including Services. Services then locally distributes gas to the Reynolds plants. Other subsidiaries of System (a public utility holding company which wholly-owns TCo, Pipeline, and Services) are engaged in the production of natural gas.

Reynolds contends that the defendants improperly refused to transport natural gas from independent producers from July 1983 through July 1986. Instead, the defendants used their exclusive ability to control gas transportation to the Richmond

area to force Reynolds and other end-users to purchase gas owned or controlled by the defendants instead of lower priced gas that Reynolds could have purchased from independent sources. The Complaint alleges that the defendants' refusal to transport natural gas from independent sources constituted an illegal tying of gas transportation to the sale of gas, and an illegal effort to monopolize the sale of natural gas in the central Virginia area.

Throughout the period from July 1983 to July 1986, the defendants followed a "non-sales displacement" transportation policy, under which transportation of gas from independent sources was made available to end-users only if the end-user would otherwise have ceased using gas, or would have switched its gas service to a pipeline that was not part of the Columbia system. Approximately 90% of the gas used by Reynolds cannot be economically replaced by any alternate fuel.

Defendants argue that all of the entities whose transportation policies are at issue are highly regulated public utilities. Their transportation policies and practices were supervised and approved by their respective regulatory bodies. Services and Pipeline filed tariffs with and operated under the scrutiny of the State Corporation Commission of the Commonwealth of Virginia ("SCC"). Defendants argue that Reynolds is barred by the state action doctrine from challenging transportation policies implemented by these tariffs under the Sherman Act. Further, the defendants contend that allegations that Services and Pipeline violated their duties pursuant to their tariffs and Virginia law should be determined by the SCC rather than this Court under the doctrine of primary jurisdiction.

TCo is regulated by the Federal Energy Regulatory Commission ("FERC"). Defendants argue that under the doctrine of primary jurisdiction, Reynolds' claim for injunctive relief against TCo should be dismissed. Further, the claim for treble damages should be stayed in favor of both pending and available further proceedings before the FERC.

*Discussion*

All three of the defendants seek relief based upon their status as regulated public utilities. The arguments of Services and Pipeline, which are both regulated by the SCC, are identical, and will therefore be addressed together. Because TCo is regulated by another agency, the FERC, the arguments in its favor will be addressed separately.

I. Services and Pipeline

Essentially, Services and Pipeline contend that regulation by a Virginia state agency renders it inappropriate that this Court adjudicate the claims Reynolds has brought against them. These defendants rely upon the two legal principles to support this contention: the state action doctrine and the doctrine of primary jurisdiction.

A. *State Action*

■ The defendants argue that Services' and Pipeline's transportation policies and practices are exempted from application of the federal antitrust laws under the state action doctrine developed from *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). In *Parker,* the Supreme Court held that the Sherman Act was not intended to restrain state action or official action directed by a state. *Id.* at 350–51, 63 S.Ct. at 313. A two-prong test is used to determine when the *Parker* state action doctrine will be applied to exempt private parties acting pursuant to state regulation from the federal antitrust laws. First, the challenged restraint must be one clearly articulated and affirmatively expressed as state policy; second, the policy must be actively supervised by the state itself. *California Retail Liquor Dealers Assoc. v. Midcal Aluminum, Inc.,* 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980).

Defendants contend that at all times relevant to this litigation, Services and Pipeline implemented their transportation policies pursuant to fully articulated state policies. As public utilities, Services and Pipeline are regulated by the SCC pursuant to the Virginia Constitution and Code. Va. Const.

Art. IX, § 2; Va.Code § 56–265.3. Defendants contend that the legislative scheme contemplates that the state through the SCC, rather than competitive forces, will determine the services provided by these utilities.

Defendants contend that an SCC Order issued September 9, 1986, shows an SCC policy consistent with Services' and Pipeline's refusals to transport. *Virginia ex rel. State Corporation Commission,* 1986 SCC Ann.Rep. 318 ("SCC Order"). Defendants construe the language *"voluntary* participation in transportation programs shall be encouraged," *id.* at 324 (emphasis added), to indicate a state policy of permitting public utilities to elect not to provide transportation service. Defendants further argue that the SCC was aware of the utilities' transportation policies, and by allowing those practices to continue stated its approval of them.

■■■ Although the first prong of the *Midcal* state action test may be met where states expressly adopt policies that permit but do not compel anticompetitive conduct by regulated private parties, *Southern Motor Carriers Rate Conference, Inc. v. United States,* 471 U.S. 48, 60, 105 S.Ct. 1721, 1728, 85 L.Ed.2d 36 (1985), defendants' reliance on the September, 1986 SCC Order is, in the Court's view, misplaced. The Order and the SCC's alleged tacit approval of the defendants' transportation practices cannot be deemed to rise to the level of a "clearly articulated and affirmatively expressed" state policy of providing the utilities the option of offering transportation service, especially in light of other circumstances indicating the state policy of increased competition and transportation. *See* SCC Order, 1986 SCC Ann.Rep. at 324.

The SCC Order taken as a whole reflects SCC praise of increased competition in the industry and nondiscriminatory transportation. *Id.* at 321, 324. The SCC declared a firm support for the "unbundling" of pipelines' merchant and transportation functions, and noted that it is not necessary to require all utility companies to file transportation tariffs which further that state policy because, "as a practical matter, most Virginia utility companies who have a demand for transportation on their systems have effective transportation tariffs on file with this Commission." *Id.* at 321. It is significant that both Services and Pipeline had such transportation tariffs on file with the SCC during the period of alleged anticompetitive behavior.

Effective April 1, 1985, Pipeline explicitly announced that it did not intend to take on any new transportation arrangements, notwithstanding the terms of its transportation tariff on file with the SCC. The SCC thereafter issued an order requiring Pipeline to show cause why it should not be ordered to comply with the terms of its tariff. On January 21, 1986, Pipeline submitted a letter to the SCC agreeing to provide transportation to all entities requesting it on a non-discriminatory basis. Based upon Pipeline's representation that it would provide transportation service, the SCC, on January 22, 1986, entered a Dismissal Order in the show cause proceeding. The SCC enforcement of Pipeline's transportation tariff by way of the show cause proceeding is further evidence of a state policy favoring open access transportation.

Virginia, through the SCC, has not clearly articulated and affirmatively expressed a policy of presenting natural gas pipelines with the option of providing gas transportation on an open access basis. Rather, the state's policy is clearly one in favor of transportation. Therefore, the first prong of the *Midcal* test cannot be met in this case, and *Parker* state action immunity to the antitrust laws is not appropriate.

### B. *Primary Jurisdiction*

■■ Defendants argue that the doctrine of primary jurisdiction indicates that Reynolds' claims against Pipeline and Services, at least in the first instance, should be determined by the SCC rather than this Court. The doctrine of primary jurisdiction, directed toward the promotion of proper relationships between the courts and administrative agencies, directs the courts to refrain from adjudicating matters which "under a regulatory scheme, have been placed within the special competence

of an administrative body." *United States v. Western Pacific R.R.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). Defendants contend that Virginia has estblished a regulatory scheme under which the SCC is especially competent to adjudicate issues regarding transportation policies and practices.

█ Reynolds contends that a stay as to its claims against Pipeline and Services is not appropriate because there are no existing or potential SCC proceedings in which the SCC could resolve any issues relevant to Reynolds' antitrust claims. Reynolds argues that the issues to be determined in this action are not the validity or violation of Pipeline's and Services' tariffs, but rather whether these defendants acted in violation of the antitrust laws and are liable for damages. Reynolds does not allege that these defendants are currently violating their tariffs or the antitrust laws.

The SCC is simply not designed to address the claims presented and the relief sought in this action. Unlike a situation in which the state has established a means of obtaining ample relief through available administrative remedies, the SCC here is unable to resolve, or even address, Reynolds' antitrust claims for past injuries. *See* Va. Code § 56–6 (providing only for prospective relief by way of injunction). Adjudication by this Court of Reynolds' antitrust claims against Pipeline and Services will complement rather than conflict with or ursurp the state's regulatory scheme.

## II. TCo

█ Defendants argue that the doctrine of primary jurisdiction directs this Court to dismiss Reynolds' claim for injunctive relief from TCo and to stay the claim for treble damages pending review of the matter by the FERC. Primary jurisdiction, the defendants contend, applies here because the FERC has jurisdiction over TCo's provision of transportation service, has the ability to adjudicate disputes regarding transportation service, and has expertise in dealing with transportation issues. *Western Pacific R.R.*, 352 U.S. at 64, 77 S.Ct. at 165.

### A. *Injunctive Relief*

The defendants base their motion to dismiss Reynolds' claim for injunctive relief on the concern that any injunction issued would conflict with the regulatory scheme established by the FERC. The concern, as expressed by defendants, is that an injunction would grant Reynolds preferential treatment over other customers for transportation service, in contravention of the FERC policy of nondiscriminatory access on a first come first served basis. Furthermore, the FERC would be precluded from altering transportation policies in the future with respect to Reynolds.

The defendants' concerns regarding the ramifications of an injunctive award are misplaced. The injunction sought in the Complaint does not assert a right to preferential treatment, but rather requests injunction against further violations of the antitrust laws. It is difficult to envision how the FERC's regulatory processes would be disturbed by the Court's enjoining future anti-competitive behavior by TCo, should Reynolds establish that it is entitled to relief on its Sherman Act claim. *City of Mishawaka v. Indiana & Michigan Electric Co.*, 560 F.2d 1314, 1321 (7th Cir. 1977), *cert. denied*, 436 U.S. 922, 98 S.Ct. 2274, 56 L.Ed.2d 765 (1978) (*"Mishawaka I"*). *See also Otter Tail Power Co. v. United States*, 410 U.S. 366, 375–77, 93 S.Ct. 1022, 1028–29, 35 L.Ed.2d 359 (1973), (*"Otter Tail"*); *Georgia v. Pennsylvania Railroad Co.*, 324 U.S. 439, 455, 65 S.Ct. 716, 725, 89 L.Ed. 1051 (1945). The nature of any injunctive relief, if Reynolds be entitled to such relief, will be determined at trial. At that point, the Court will be in a much better position to determine whether a potential conflict with the FERC exists. If that be the case, the Court may elect to use some mechanism, such as the retention of "jurisdiction 'necessary or appropriate' to carry out the decree or 'for the modification of any of the provisions'" as used by the District Court in *Otter Tail*, 410 U.S. at 376, 93 S.Ct. at 1029, to avoid possible interference with the regulatory scheme.

## B. *Damages Claim*

Defendants submit that this Court should stay Reynolds' claim for treble damages until the issues have been reviewed and decided by the FERC. FERC is currently considering its Order No. 436 on remand from the Court of Appeals for the District of Columbia Circuit. *Associated Gas Distributors v. FERC*, 824 F.2d 981 (D.C.Cir.1987). Order No. 436, 50 Fed.Reg. 42,408 (1985), was issued on October 9, 1985, and "envisages a complete restructuring of the natural gas industry." *Associated Gas Distributors*, 824 F.2d at 993.

In essence, Order No. 436 serves to unbundle pipelines' transportation roles. *Id.* at 994. Defendants contend that Reynolds' claims regarding transportation service from TCo should not be adjudicated until the proceedings regarding the FERC's Order No. 436 are complete and the FERC's transportation policies are thereby clarified.

Reynolds argues that final determination of Order No. 436 is neither dispositive nor relevant to its claims. Instead, Reynolds looks to Order 234–B, 48 Fed.Reg. 34,872 (1983) and Order 319, 48 Fed.Reg. 34,875 (1983), both issued July 20, 1983, as authority for TCo to have transported gas. Reynolds submits that Orders 234–B and 319 provided TCo with explicit authority to provide end-users, such as Reynolds, with unrestricted gas transportation service. These orders made it possible for TCo to provide any transportation it chose to any end-user for any purpose, without further approval from FERC. The restrictions in TCo's subsequent transportation policy were included by TCo's choice, not by FERC mandate.

The defendants correctly point out that the FERC has over the years significantly altered its position with respect to transportation. However, defendants' contention that uncertainty regarding the FERC's ultimate position on Order 436 casts uncertainty likewise on the application of the antitrust laws is less than persuasive. Order 436 was not issued until close to the end of the alleged period of alleged anticompetitive activity, was almost immediately vacated by the District of Columbia Circuit, *Maryland People's Counsel v. FERC*, 761 F.2d 768 (D.C.Cir.1985) ("MPC I"); *Maryland People's Counsel v. FERC*, 761 F.2d 780 (D.C.Cir.1985) ("MPC II"); *Maryland People's Counsel v. FERC*, 768 F.2d 450 (D.C.Cir.1985) ("MPC III"); and did not control TCo's policies during the relevant period. Furthermore, Orders 234–B and 319, which clearly authorized gas transportation during the period at issue, were vacated by *MPC II* in 1985 only to the extent that they allowed discriminatory terms in transportation policies. 761 F.2d at 789.

■ The Court is unaware of other ongoing or potential FERC proceedings which might justify a stay of this action. Reynolds seeks redress for past injuries, rather than for a current violation of any rule or other law administered by the FERC. *See* Rule 206(a), FERC Rules of Practice and Procedure, 18 C.F.R. § 385.206(a) (1987). The FERC jurisdiction over relevant issues which defendants refer to is presumably based upon Section 5 of the Natural Gas Act, 15 U.S.C. § 717d. Section 5 proceedings, however, are wholly prospective in nature. *Atlantic Refining Co. v. Public Service Commission*, 360 U.S. 378, 389, 79 S.Ct. 1246, 1253, 3 L.Ed.2d 1312 (1959); *Tennessee Gas Pipeline Co. v. FPC*, 606 F.2d 1373, 1380 (D.C.Cir.1979). Furthermore, the FERC does not have authority to adjudicate claims under the antitrust laws. *E.g.*, *California v. FPC*, 369 U.S. 482, 488–90, 82 S.Ct. 901, 905–06, 8 L.Ed.2d 54 (1962); *Central Iowa Power Cooperative v. FERC*, 606 F.2d 1156, 1162 (D.C.Cir. 1979); *Sunflower Electric Cooperative v. Kansas Power & Light Co.*, 603 F.2d 791, 801–02 (10th Cir.1979).

■ The lack of any indication that adjudication of the antitrust claims would be in conflict with the regulatory scheme, as well as FERC's lack of authority to address the antitrust claims, indicate that primary jurisdiction in this case does not lie with the FERC. That some facets of the underlying dispute may be within the jurisdiction of the FERC does not dictate referral of this action to the FERC. *Mishawaka I*, 560

F.2d at 1322 (*citing Otter Tail*, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359).

For the foregoing reasons, defendants' attempted invocation of the state action and primary jurisdiction doctrines are, in the instant case, inappropriate.

An appropriate Order shall issue.

## ORDER

For the reasons stated in the Memorandum of the Court this day filed and deeming it proper so to do, it is ADJUDGED and ORDERED that defendants' motions for judgment on the pleadings, for dismissal, and for a stay be and the same hereby are DENIED.