**LIBERTY MUTUAL FIRE INS. CO., Plaintiff,**

v.

**CANAL INS. CO., Defendant.**

**No. 5:96cv116BrS.**

United States District Court, S.D. Mississippi, Western Division.

March 11, 1998.

---

Lawrence D. Wade, Robert B. Virden, Campbell, Delong, Magwood & Wade, Greenville, MS, for Liberty Mutual Fire Insurance Company, plaintiff.

John B. MacNeill, Jason S. Ehrlinspiel, MacNeill & Buffington, P.A., Flowood, MS, for Canal Insurance Company, defendant.

## MEMORANDUM OPINION AND ORDER

BRAMLETTE, District Judge.

This matter is before the Court on Cross–Motions for Summary Judgment, filed in this declaratory judgment action by the plaintiff, Liberty Mutual Fire Insurance Company ("Liberty") (docket entry # 38), and the defendant, Canal Insurance Company ("Canal") (docket entry # 37). For the reasons stated herein, Liberty's motion is GRANTED, and Canal's motion is DENIED. It follows that Liberty's motion to strike exhibits attached to the defendant's motion for summary judgment (docket entry # 40) is moot.

## I. FACTUAL AND PROCEDURAL HISTORY

From September 11, 1992 to September 11, 1993, Canal Insurance Company ("Canal") provided Basic Automobile Liability Insurance to J.W. McConnell, d/b/a McConnell Logging ("McConnell") in connection with McConnell's logging business. From May 1, 1993 to May 1, 1994, Liberty Mutual provided Commercial Liability and Business Automobile Liability Insurance to Anderson–Tully Company ("ATCO").

ATCO is in the business of lumber production. McConnell provides services to companies like ATCO such as cutting trees and transporting them to sawmills. In the present case, the parties entered into a "Cutting and Hauling Agreement" ("Agreement"), whereby McConnell agreed to "furnish and provide all labor, tools, materials and equipment for the cutting and converting in saw timber and other products, all trees that have been designated by Anderson–Tully for such purposes...." McConnell further agreed to "cut, process, load, transport and deliver the aforesaid forest products to Anderson–Tully's mill" located in Waltersville, Mississippi.

On August 30, 1993, Wilmer Wilson ("Wilson"), an employee of McConnell, was hauling an empty trailer to pick up a load of timber to be transported to ATCO's sawmill. While en route Wilson collided with a vehicle being driven by Jane Love. Jane Love was killed in the accident and her husband, Homer Love, was injured. Laura Carlock, one of the wrongful death beneficiaries of Jane Love, and Homer Love filed a wrongful death and negligence suit against McConnell, Wilson, and ATCO in this Court.

On November 24, 1993, Liberty demanded that Canal defend and indemnify its insured, ATCO, in the *Carlock* litigation. Canal refused to assume ATCO's defense, and ATCO subsequently settled with the plaintiffs for $112,500. On December 1, 1993, Canal demanded that Liberty defend and indemnify McConnell in the *Carlock* litigation, and Liberty failed to respond. McConnell and Wilson went to trial. After hearing all the evidence, the jury returned a verdict in favor of the plaintiffs and the wrongful death beneficiaries in the amount of $231,029. The jury also returned a verdict in favor of Homer Love, individually, awarding personal injury damages in the amount of $395,000.25. On March 9, 1995, the Court entered a judgment in favor of the plaintiffs reflecting the jury's award. Canal paid its policy limits, and the defendants were left with liability to the plaintiffs for approximately $213,529.30.

Liberty filed suit in the present case asking for the attorney's fees, costs, and expenses expended by Liberty in the defense of ATCO. Liberty is also asking for the $112,500 it paid to settle the *Carlock* litigation because, according to Liberty, they were forced by Canal's wrongful refusal to defend and indemnify ATCO in that case.

In its answer, Canal counter-claimed, arguing that it did not have a duty to defend ATCO based on an exclusion discussed more fully *infra*. In addition, Canal argued that under the Liberty policy naming

ATCO as the insured, coverage was afforded to McConnell and Wilson, and Liberty had a duty to defend and pay on behalf of McConnell and Wilson in the *Carlock* litigation. Consequently, Canal sued, asking for attorney's fees, costs, and expenses incurred in defending the plaintiffs' claims in the *Carlock* litigation. Also, Canal asked for the $315,621.56 paid by them on behalf of McConnell and Wilson as a result of the judgment entered against them.

Both parties have now filed summary judgment motions asking this Court to enter a Declaratory Judgment interpreting the relevant portions of the insurance policies at issue. Once the provisions have been interpreted, summary judgment may be granted or denied accordingly.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is "no genuine issue as to any material facts and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The threshold inquiry, therefore, is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Put another way, "summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion." *McDermott Intern., Inc. v. Wilander,* 498 U.S. 337, 356, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). "Guesswork and speculation simply cannot serve as a basis for sending a case to a jury." *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 658 (5th Cir.1996).

The Fifth Circuit has described the standard to be applied in summary judgment cases as follows:

If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting [summary judgment] is proper. On the other hand, if reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, [summary judgment] should be denied, and the case submitted to the jury. A mere scintilla is insufficient to present a question for the jury. However, it is the function of the jury as the traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses. The Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion for [summary judgment].

*Molnar v. Ebasco Constructors, Inc.,* 986 F.2d 115, 117–18 (5th Cir.1993) (citation omitted).

In the present case, the facts are undisputed. Moreover, the terms of the policies at issue are unambiguous. "Once it is determined that the policy is clear and unambiguous, the meaning and effect of the policy is also a question of law to be judicially decided." *Love v. McDonough,* 758 F.Supp. 397, 399 (S.D.Miss.1991) (citing *Overstreet v. Allstate Ins. Co.,* 474 So.2d 572 (Miss.1985)). Therefore, summary judgment is appropriate in the present action.

### B. INSURANCE CONTRACT INTERPRETATION

This entire action depends upon the interpretation of certain provisions in two separate insurance contracts. Therefore, this Court will look to the well-established rules regarding the interpretation of insurance contracts. In *Canal Ins. Co. v. T.L. James & Co.,* 911 F.Supp. 225, 228 (S.D.Miss.1995), Judge Lee provided a succinct explanation of the rules applicable to the present case. He explained:

Mississippi law recognizes the general rule that provisions of an insurance con-

tract are construed strongly against the drafter. Consistent with this principle, insuring clauses are construed broadly to effect coverage, and exclusionary clauses that restrict coverage are construed narrowly against the insurer. So, to benefit from an exclusionary provision in an insurance contract, the insurer must show that the exclusion applies and that it is not subject to any other reasonable interpretation that would afford coverage. The court must strive to give effect to the parties' intention, as expressed by the plain language of the policy, but where there are two or more reasonable interpretations of a clause, the court will adopt the interpretation that provides coverage. Moreover, any doubt as to the existence of a defense obligation is likewise resolved in favor of the insured.

*James,* 911 F.Supp. at 228 (citations omitted). With these rules in mind, the Court looks to the policies at issue.

### C. E–45 TRUCKMAN'S ENDORSEMENT

When Liberty demanded that Canal defend ATCO in the *Carlock* litigation, Canal refused, claiming that it had no duty to defend based on an exclusion in its policy entitled the "E–45 Truckman's Endorsement."

The E–45 Truckman's Endorsement provides:

In consideration of the premium charged for the policy to which this endorsement is attached, it is understood and agreed that no coverage is extended to any person, firm or organization using the described automobile pursuant to any lease, contract of hire, bailment, rental agreement or any similar contract or agreement, either written or oral, express or implied, the terms and provision of the Insuring Agreement III of Section A, entitled "Persons Insured" notwithstanding.

In the event the automobile described in this policy is being used or maintained pursuant to any lease, contract of hire, bailment, rental agreement or any similar contract or agreement, either written or oral, express or implied, the insurance afforded the named insured shall be excess insurance over any other insurance.

The class of "PERSONS INSURED" is defined in Section A, III of Canal's policy as follows:

III. PERSONS INSURED: Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured;

(b) any partner or executive office thereof, but with respect to a temporary substitute automobile, only while such automobile is being used in the business of the named insured;

(c) any other person while using an owned automobile or a temporary substitute automobile with the permission of the named insured, provided his actual operation or (if his is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:

 (1) a lessee or borrower of the automobile, or

 (2) an employee of the named insured or of such lessee or borrower;

(d) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a), (b) or (c) above.

It is Liberty's position that ATCO is an insured under subparagraph "d" as an organization with respect to its liability because of the acts or omissions of Wilson, who is an insured under subparagraph "c." In addition, ATCO argues that the E–45 Truckman's Endorsement does not apply in the present situation to exclude them from Canal's policy.

Not surprisingly, Canal interprets the endorsement differently. It is Canal's position that the E–45 exclusion does indeed apply to ATCO. Canal bases this argument

in part on what it describes as the "plain and common everyday definitions" of the terms "using" and "hire." According to Canal, ATCO was "using" McConnell's trucks within the context of the endorsement. Moreover, according to Canal, the agreement between the parties is referred to in the E–45 endorsement as a "contract of hire" thereby triggering the exclusion.

At the outset, the Court must determine whether ATCO was an insured under the Canal policy. The Canal policy provides in pertinent part:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence and arising out of the owner-ship, maintenance or use ... of an owned automobile ... and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage....

■ Section III of the policy described *supra,* entitled "PERSONS INSURED," included in the category of "insureds" "[a]ny other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a), (b) or (c) above." Because ATCO was vicariously liable for the acts of Wilson who plainly falls under the description in subparagraph (c), it is clear that ATCO was an insured under the Canal policy. However, Canal argues that despite being an insured under the policy, ATCO was excluded by the E–45 Truckman's Endorsement.

In support of its argument that ATCO was excluded by the endorsement, Canal focuses on the terms "using" and "contract of hire." Therefore, the determinative question is whether ATCO was "using the described motor vehicle pursuant to any lease, *contract of hire* ... or any similar contract or agreement."

At this point, a brief summary of the *James* case mentioned *supra* is appropri-

ate since that case was so similar to the present case. The Court realizes that there are some factual differences in the present case as counsel for Canal has pointed out. The Court also realizes that the *James* case is not binding on this Court. Nevertheless, the issues are extremely similar, and many of the arguments now espoused by Canal were argued in the *James* case.

In *James,* Canal insured Grinston Sand and Gravel Company ("Grinston"). *James,* 911 F.Supp. at 226. T.L. James & Company ("James") was hired by the State of Mississippi as the general contractor on a highway project in Lauderdale County. *Id.* James subcontracted with Grinston for Grinston to furnish sand and gravel for the project. *Id.* During the construction of the highway, Midway Mart, Inc., a convenience store located in the vicinity of the project, complained that trucks hauling sand and gravel had cut across its parking lot, causing damage for which compensation was sought. *Id.* James notified Grinston of Midway's claim and demanded that Grinston or its liability carrier protect, and if necessary defend and indemnify James against Midway's claim. *Id.* Canal declined. *Id.*

Eventually, Midway filed suit against James and Grinston. *Id.* James demanded that Canal provide it with a defense to the action, asserting that it, too, was an insured under the Canal policy. *Id.* at 227. Canal refused. *Id.* After trial, Canal filed a declaratory judgment action alleging that James was not an insured under the terms of the policy. *Id.* James and his insurer The Highlands Insurance Group ("Highlands") counterclaimed, arguing that James was an insured under the Canal policy. *Id.*

In the *James* case, Canal argued that even if James was an insured under the policy, James was excluded from coverage by the Truckman's Endorsement. *Id.* at 228–29. The endorsement in that policy was identical to the one in the present case. *Id.* at 228. Moreover, Canal's argu-

ment was based on the terms "using" and "contract of hire." *Id.* at 228–29. In other words, Canal used the exact arguments in the James case as in the present case. In James, the Court found that James had been an insured under the Canal policy and that James was not excluded by the Truckman's Endorsement. *Id.* at 230.

### 1. USING

 In *James*, the Court held:

[T]he term "using" in this exclusion, while not necessarily limited to actual physical operation of the vehicle (i.e., driving), is appropriately read as requiring more than just the ability to direct and control the vehicle. Of course, even if the term "using" could reasonably be defined to include "some measure of control over the vehicle," . . . because the term can just as reasonably, if not more reasonably, be interpreted as requiring something more than just the ability to direct and control the vehicle, it follows that the truckman's endorsement must be so construed.

*Id.* at 229–30.

Canal attempts to distinguish the present case from the *James* case, as it pertains to the term "using," by pointing out that ATCO was using the McConnell trucks to haul ATCO's products as opposed to those of McConnell. In *James*, Grinston was hauling sand supplied by Grinston himself. Canal goes on to explain that McConnell was not in the business of selling lumber, timber, or wood products to other parties. Grinston was in the business of selling and delivering sand and gravel. Essentially, Canal argues that because the product being hauled belonged to ATCO, and because it was cut on ATCO's land and hauled to ATCO's sawmill, ATCO was "using" McConnell's trucks.

While the Court appreciates the differences in the *James* case and the present case with regard to this issue, the Court believes that Canal places too much emphasis on the ownership of the product being hauled. Clearly, the crux of Judge Lee's opinion with regard to the term "using" revolved around the issue of *control.* This Court is in full agreement with that interpretation. The term "using" as it appears in the "Truckman's Endorsement" is appropriately read as "requiring more than just the ability to direct and control the vehicle." *Id.* at 229–30. Canal has offered no evidence that it could do anything other than simply telling the trucks where to haul the timber. Perhaps this can be construed as "directing" the vehicles; it is certainly nothing more.

Canal also attempted to differentiate the *James* case from the present case as it pertains to the term "using" by pointing out that the transportation of the sawtimber was in furtherance of ATCO's business. Apparently, Canal is basing this aspect of its argument on the following language in the *James* opinion: "Clearly this endorsement [the Truckman's Endorsement] was not intended to apply to situations when the named insured is using its own trucks in furtherance of its own business, providing its own drivers and materials." *Id.* at 228–29.

Again, the Court feels that Canal's argument is misplaced. Simply because the endorsement does not apply to situations when the named insured is using its own trucks in furtherance of its own business *does* not necessarily mean that the endorsement does apply when the named insured is using its own trucks in furtherance of *another's* business. Even if the Court were to make such a giant leap of logic, the reasoning would still not apply to the present case. This is so because McConnell *was* using its trucks in furtherance of its own business, the business of hauling another's logs to the sawmill.

### 2. CONTRACT OF HIRE

 As mentioned, Canal attempted to argue that there was a "lease, or contract of hire" for the trucks in the *James* case, just as it is doing in the present case. In *James*, the Court summarily dismissed this argument stating that "James did not

lease Grinston's trucks. Moreover, James did not contract to hire Grinston's drivers. It simply subcontracted with Grinston, which provided its own drivers to do its own work in the performance of its subcontract, and which operated its own trucks at all times by its own employees." *Id.* at 228.

Canal argues that the *James* interpretation of "hire" is inapplicable in the present case since the present case is not based on a subcontract. However, the Court in a case involving the exact same parties also addressed this same argument made by Canal.

In *Canal Ins. Co. v. Liberty Mutual Ins.*, 395 F.Supp. 962, 963 (N.D.Ga.1975), a truck being driven by D.C. Jordan and occupied by members of his family collided with a truck owned by L.C. Townsend and being driven by Townsend's employee, Willie West. At the time of the collision, West was returning to McIntosh County after delivering pulpwood to Union Camp Corporation in Savannah. *Canal,* 395 F.Supp. at 963. The delivery was made in performance of a contract between L.C. Townsend and Union Camp for the harvesting, cutting, and delivery of pulpwood. *Id.* In other words, this trip was pursuant to a "Cutting and Hauling Agreement." The members of the Jordan family were injured and filed suit against L.C. Townsend, Willie West, and Union Camp. *Id.*

At the time of the collision, Canal insured Townsend under a policy extremely similar to the one at issue in the present case. *Id.* When Union Camp's insurers demanded that Canal defend them, Canal refused partly because of the E–45 Endorsement. *Id.* at 964. The Court held that the endorsement did not apply in this instance to exclude Union Camp from coverage. *Id.* at 974. The Court wrote that "[t]he Canal endorsement does not exclude West or Townsend because the Townsend truck was neither leased, hired, bailed nor rented to Union Camp. Rather, as stated before, the Court concludes that the contract between Townsend and Union Camp was for labor and services in which the Townsend truck was only used incidentally." *Id.*

This Court finds the Georgia Court's reasoning persuasive. ATCO did not "hire" McConnell's trucks in the present case; not, at least, as it was intended in the Truckman's Endorsement. Canal attempts to construe the meaning of "hire" in the present case to mean something similar to hiring a new manager or hiring a secretary. Clearly, this is not the same as hiring a truck as in the present case. Hiring a truck under the Canal policy is much more akin to renting a truck. In other words, even though the term "hire" is often used in a labor or employment context, that definition is not appropriate with respect to McConnell's trucking business. The E–45 Truckman's Endorsement utilizes the term "hire" in the same context as a lease, bailment, or rental agreement, where coverage is excluded to any person or organization using the Canal insured vehicle pursuant to any "lease, contract of hire, bailment, rental agreement or *similar contract or agreement.*" Canal's argument that "hire" means an employment contract or labor arrangement does not comply with the context of the E–45 Truckman's Endorsement because an employment relationship or labor arrangement is not a "similar agreement" to a "lease," "rental agreement," or "bailment" of a vehicle by the owner McConnell to another party. The case of *Casino Air Charter. Inc. v. Sierra Pacific Power Co.,* 95 Nev. 507, 596 P.2d 496 (1979) provides an appropriate analogy.

In *Casino,* an employee of the federal government was conducting an aerial recognizance survey of a proposed power line route when the plane in which he was a passenger crashed, killing the employee and the pilot. *Casino,* 596 P.2d at 497. The flight arrangements were organized by the defendant Sierra Pacific Power Company, which was the company that intended to install the proposed power line. *Id.* Following the crash, the estate of the federal employee sued the flight char-

ter service, Casino Air Charter, Inc., the pilot's estate, and Sierra Pacific Power Company. *Id.* The claim against Sierra Pacific Power alleged that it was vicariously liable for the conduct of the pilot. Thereafter, Casino Air Charter, Inc. made a demand for insurance coverage under Sierra Power's liability policy claiming that it was an "additional insured" under Sierra's policy because Sierra Power had "hired" the airplane that crashed. *Id.* at 498. In rejecting this argument, the Court addressed the critical distinction between "hiring" of an aircraft or automobile and "contracting" for transportation services. *Id.* at 498–99.

> In the instant case, there was no hiring of an aircraft. Instead, Sierra contracted for the transportation services of an airplane and a qualified pilot. Sierra neither designated a particular aircraft nor took any part in the preparation of a flight plan. Indeed, Sierra has been judicially exonerated from tort liability arising from its conduct. Clearly, (the insurance company's) excess liability contract provides no coverage to [Casino Air].

*Id.* at 499.

The Court is convinced that ATCO did not "hire" McConnell's trucks. ATCO merely hired McConnell to perform a service, and the trucks were incidental to that service. McConnell used its own trucks and provided its own drivers and materials. ATCO never drove or otherwise operated the trucks. In fact, ATCO had no right to do so. Even if the Court felt that Canal's interpretation was reasonable, the rules regarding insurance contract interpretation dictate that the Court interpret the provision as providing coverage. *See. e.g., Nationwide Mut. Ins. Co. v. Garriga,* 636 So.2d 658, 662 (Miss.1994) ("Any ambiguities in an insurance contract must be construed against the insurer and in favor of the insured and a finding of coverage.").

Therefore, the Court finds that ATCO was an insured under Canal's policy and the Truckman's Endorsement did not apply to exclude ATCO from that coverage.

Accordingly, Canal had a duty to defend and indemnify ATCO in the *Carlock* litigation, and thus summary judgment is granted in favor of Liberty as to that issue and denied as to Canal's motion. Consequently, Liberty is entitled to the attorney's fees and costs expended in defending the *Carlock* law suit. However, whether Canal is liable for the $112,500 paid by Liberty to settle the litigation against ATCO is a more difficult issue.

■ At the outset, it should be noted that Canal paid its policy limits in the *Carlock* litigation. In its argument that Canal should reimburse Liberty for the entire $112,500, Liberty cites case law in which an insurer who wrongly refused to defend a party was held liable for the amounts expended in defending and eventually settling the litigation. Moreover, these insurers were held liable even when the settlement amount exceeded the policy limits. *See e.g., Coleman v. Holecek,* 542 F.2d 532, 537 (10th Cir.1976). However, courts that have made such rulings have done so in cases where the insurer has breached it duty to defend in *bad faith.* As a general rule of law when an insurance company in good faith mistakenly refuses to defend a claim it is not liable beyond the limits of its policy. *See* George J. Couch 14 *Couch on Insurance* 2d § 51:55 at 555. In contrast, "[i]f the refusal to defend is accompanied by bad faith, either in the investigation, negotiations or otherwise, the insurer will be liable for the entire judgment irrespective of the policy limits." *See* 7C John A. Appleman, *Insurance Law & Practice* § 4689 at 212. In the present case, there are no allegations of bad faith. Canal argues that it is not liable to Liberty for the $112,500 because when Liberty settled with the plaintiffs, it was aware that Canal had already offered its policy limits to settle the litigation. In its brief supporting its motion for summary judgment, Canal explains:

> Canal had tendered its limits and could not, nor was it obligated under any set of facts, pay more than its limits. Fur-

thermore, Liberty knew and fully appreciated the fact that the *Carlock* plaintiffs would not settle the case for just the Canal limits and that it had to pay the monies in order to settle the case for ATCO. Again, this was regardless of whether or not Canal defended ATCO.

Canal is arguing that it paid its policy limits, and therefore, it can not be held liable for anything more. Put another way, Canal argues that Liberty's damages are limited to those proximately caused by Canal's breach of contract. Their argument is essentially as follows: Even if Canal had agreed to defend ATCO, Liberty would have had to pay damages. The jury in the *Carlock* litigation returned a verdict of 626,029.25. Canal's policy limits were $300,000. Therefore, according to Canal, had they defended ATCO, Liberty would have ended up paying the excess of this judgment—$326,029.25. In other words, Liberty actually benefitted from Canal's refusal, and therefore, Liberty has no damages as a result of the breach of contract.

The assumption in this argument, however, is that if Canal had defended ATCO, ATCO would have been found liable for damages. Canal writes:

> If Canal had defended ATCO, then either of two things could · have happened. First, the case would have proceeded to trial and judgment. In that respect, Liberty would have been faced with paying $326,029.25, the amount of judgment over and above the limits of the Canal policies. On the other hand, Liberty could have attempted to extricate ATCO from the case by settling with the *Carlock* plaintiffs. As the Court knows, Liberty chose the second option and settled with the *Carlock* plaintiffs for $112,500.

(Def.'s Br. at 7).

Canal fails to mention that had ATCO gone to trial, a jury could have absolved Liberty of liability entirely. The fact does remain that ATCO could have· succeeded with an independent contractor defense at trial. It is true that this Court denied

ATCO's summary judgment motion with regard to this argument, but that was simply because there were still genuine issues of material fact. Therefore, the Court cannot assume that Liberty would have had to pay the excess $326,029.25. In fact, the Court is not prepared to assume anything, and Canal's argument necessarily calls for an assumption. This Court can only rely on what occurred.

■ In the end, Canal was supposed to defend ATCO and refused to do so. Liberty then settled with the plaintiffs for far below the Canal policy limits. This Court will not allow Canal to benefit from this wrongful refusal simply because its insured was found liable at trial for an amount in excess of Canal's policy limits.

The Fifth Circuit has explained the consequences resulting from an insurer's refusal to defend its insured:

> Under Mississippi law, if the allegations in tort suit pleadings are such as would, if true, bring the claim within the · coverage of an insurance policy, the insured is required to defend its putative insured. If the insurer believes that the tort suit defendant is not in fact its insured, the insurer may refuse to provide him with a defense. However, such a course is fraught with risk for the insurer, since if the insurer's refusal to defend is ultimately found unjustifiable, the insurer is liable for damages resulting from its failure to defend. Ordinarily, damages will consist of the defendant insured's cost of defense. If the insured has settled the case the insurer will be liable for the amount of any settlement even if the applicable policy requires the insurer's ·consent to any settlement agreed to by the insured.

*Martin v. Travelers Indemnity Co.*, 450 F.2d 542, 550 (5th Cir.1971) (citations omitted); *see also Canal Ins. Co. v. First Gen. Ins. Co.*, 889 F.2d 604, 612 (5th Cir.1989); *Liberty Mutual Ins. Co. v. U.S. Fid. & Guar. Ins. Co.*, 756 F.Supp. 953, 957 (S.D.Miss.1990); *Mavar Shrimp and Oyster Co. v. U.S. Fid. & Guar. Co.*, 187 So.2d

871, 875 (Miss.1966). Canal chose to take a risk by refusing to defend ATCO. It is clear that such a refusal was unjustified. Therefore, Liberty's motion with regard to this issue is granted, and Canal is ordered to reimburse Liberty the $112,500 expended in settling the *Carlock* litigation.

### D. LIBERTY'S DEFENSE OF MCCONNELL AND WILSON

[8] Canal argues that it did not owe a duty to defend ATCO. Moreover, Canal argues that Liberty's policy provided coverage for McConnell and Wilson and that Liberty owed McConnell and Wilson a defense and indemnity in the *Carlock* litigation. This argument is based largely on Section 11 of the Liberty policy which provides in pertinent part:

> We will pay all sums an insured legally must pay as damages to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto....
>
> 1. Who is an insured:
>
> b. Anyone else while using with your permission a covered auto you own, hire or borrow....
>
> c. Anyone liable for the conduct of an insured described above but only to the extent of that liability.

The language contained in this section unambiguously provides that the automobile liability insurance purchased by ATCO covers the named insured and "anyone else while using with [the named insured's] permission a covered auto [the named insured] owns, hires, or borrows." The Court has already found that ATCO did not own, hire, or lease any vehicle in the present case. It follows that McConnell and Wilson are not "insureds" under II(b) of the Liberty policy. As to II(c), McConnell and Wilson were clearly not liable for any conduct on the part of ATCO. As the plaintiff notes in its response to Canal's motion for summary judgment, the *Carlock* litigation was "predicated on the proposition that Wilson was at fault in causing the accident and that [ATCO] was vicari-ously liable for the conduct of Wilson, not vice-versa."

Accordingly, the Court finds that McConnell and Wilson were not covered under the Liberty policy, and thus Liberty did not owe them a defense and indemnity in the *Carlock* litigation. Summary judgment as to this issue is therefore granted in favor of the plaintiff, Liberty and denied as to the defendant, Canal.

IT IS THEREFORE ORDERED that the plaintiff's motion for summary judgment (docket entry # 38) is, hereby, granted as to all issues. The defendant's motion for summary judgment (docket entry # 37) is, hereby, denied as to all issues. As a result of its motion for summary judgment being granted, the plaintiff's motion to strike (docket entry # 40) is rendered moot. In accordance with Rule 58 of the Federal Rules of Civil Procedure, a separate judgment in conformity with and incorporating by reference the foregoing Memorandum Opinion shall issue. Liberty Mutual Fire Insurance Company is hereby ordered to provide the Court with a proposed Final Judgment detailing the calculation of damages within Seven (7) days of entry of this Order.

SO ORDERED.