NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0360n.06

No. 12-5857

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Apr 10, 2013*

DEBORAH S. HUNT, Clerk

LM INSURANCE CORPORATION; LIBERTY
MUTUAL FIRE INSURANCE COMPANY,

      Plaintiffs-Appellees,

v.

CANAL INSURANCE COMPANY,

      Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY

O P I N I O N

BEFORE: MARTIN, GUY, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** William Henderson's truck collided with Charles Henney's

vehicle in October 2008. Charles Henney died as a result of the accident, and his estate brought a

suit against Henderson and the company for which he was hauling aggregate, Hinkle Contracting

Corporation. Prior to the accident, Henderson had purchased an automobile insurance policy

through Canal Insurance Company ("Canal"), Defendants-Appellants, that listed Hinkle Contracting

as a designated insured. Hinkle Contracting was also covered by two policies issued by Plaintiffs-

Appellees, Liberty Mutual Fire Insurance Company and LM Insurance Corporation.

What ensued was a dispute between Canal and Plaintiffs over whether Canal had a duty to

defend Hinkle Contracting against the vicarious-liability and independent-misconduct claims

asserted by the Henney estate against Hinkle Contracting. Plaintiffs ultimately assumed the entirety

of Hinkle Contracting's defense in the Henney estate action. They brought this diversity case in the Eastern District of Kentucky seeking a declaratory judgment and the costs of defending Hinkle Contracting in the Henney estate action. In the end, the district court granted Plaintiffs' motion for summary judgment and Canal appealed. We now affirm.

**I.**

**A.**

In May of 2006, William Henderson, d/b/a Henderson Trucking ("Henderson"), entered into a contract ("hauling contract") with Hinkle Contracting, whereby Henderson agreed to provide hauling services to Hinkle Contracting. The hauling contract stated that Hinkle Contracting "from time to time and at its discretion, may tender to Contractor [(Henderson)] . . . construction materials for delivery," and that Hinkle Contracting had the right to require Henderson to deliver the materials by the shortest practicable route and within a specified time period. Henderson was to use his own equipment, was responsible for any maintenance needed as a result of hauling for Hinkle Contracting, and was to be paid by the weight hauled. The hauling contract required Henderson to procure liability insurance that named Hinkle Contracting as an additional insured on a primary and non-contributory basis, in an amount not less than $1 million. The hauling contract also provided that Henderson would indemnify and hold harmless Hinkle Contracting.

Henderson obtained a liability insurance policy through Canal; he paid an additional $200 premium to obtain a designated-insured endorsement, which named Hinkle Contracting as an additional insured.

Hinkle Contracting also maintained its own insurance policies. LM Insurance Corporation ("LM") issued Hinkle Contracting a commercial general liability insurance policy. Liberty Mutual Fire Insurance Corporation ("Liberty Mutual") issued Hinkle Contracting a business auto policy.

**B.**

On October 30, 2008, while the above policies were effective, Henderson was involved in an accident with Charles Henney, at a time when Henderson was hauling aggregate for Hinkle Contracting. Henney died as a result of the accident. Henderson gave Canal notice of the accident on October 31, 2008. Hinkle Contracting notified Liberty Mutual of the accident. Liberty Mutual undertook Hinkle Contracting's defense. In the spring of 2009, Liberty Mutual informed Canal that Henderson was hauling aggregate for Hinkle Contracting at the time of the accident. Liberty Mutual also requested that Canal take over the defense of Hinkle Contracting in the Henney estate action.

In early June 2009, Canal's counsel advised Liberty Mutual that the Canal policy provided no coverage to Hinkle Contracting because there was no evidence that Hinkle Contracting was vicariously liable. Nonetheless, even if there were such a claim, Canal stated that the Liberty Mutual auto policy and Canal policy would be co-primary.

In late June 2009, the Henney estate's attorney informed Liberty Mutual that the estate would pursue non-automobile theories of liability against Hinkle Contracting.

**C.**

On October 28, 2009, the Henney estate filed suit against *inter alia* Henderson and Hinkle Contracting. The complaint alleged six counts against Hinkle Contracting and Henderson. Count I stated that Henderson negligently or grossly negligently operated his truck as an agent of Hinkle

Contracting. The Henney estate alleged that Hinkle Contracting was vicariously liable for these acts. Count II stated that Henderson, with the knowledge of Hinkle Contracting, negligently or knowingly operated his truck while it was overloaded and that Hinkle Contracting was vicariously liable for Henderson's acts. Count IV alleged that Hinkle Contracting negligently or knowingly overloaded Henderson's dump truck, which contributed to the accident. Count VI asserted that all of the defendants were liable for intentionally, recklessly, or grossly negligently overseeing Henderson's truck, which entitled the Henney estate to punitive damages. Finally, counts VII and VIII alleged that the defendants engaged in a joint enterprise or conspiracy to overload the trucks.

In November 2009, Liberty Mutual's adjuster wrote to Canal's attorney and attempted to tender Hinkle Contracting's defense and indemnification to Canal "on behalf of Hinkle." Canal's counsel responded in January 2010 by advising Liberty Mutual that Canal would evaluate what duties may be owed by Canal to Hinkle Contracting based upon the allegations in the complaint.

In late March 2010, Canal informed Liberty Mutual that Canal had never received a request from Hinkle Contracting to tender its defense to Canal and that the tender was a non-delegable task. Canal advised Liberty Mutual that if such a request were made, Canal would work with Liberty Mutual on a co-primary basis. In June 2010, Canal received a letter from Hinkle Contracting's attorney formally tendering the defense and indemnification to Hinkle Contracting. In June 2010, Canal agreed that Hinkle Contracting was an additional insured under Henderson's Canal policy but that Hinkle Contracting's coverage was limited to the vicarious-liability claims.

On July 9, 2010, Canal reiterated its acceptance of Hinkle Contracting's tender on a co-primary basis with Liberty Mutual. Canal also stated that it would be amenable to discussing a "cost

sharing agreement for Hinkle Contracting's defense as of June 7, 2010." Sealed App. at 40. Canal received no further communications from Hinkle Contracting or Liberty Mutual about a cost-sharing agreement. Canal did not make any efforts, however, to assist in Hinkle Contracting's defense. Canal was not consulted about choice of defense counsel or provided with a single invoice for Hinkle Contracting's defense costs and expenses until after the present lawsuit was initiated. Liberty Mutual never informed Canal that LM was providing some part of Hinkle Contracting's defense costs. Canal has not contributed or reimbursed Plaintiffs for the cost of defending Hinkle Contracting in the Henney estate action.

In January 2011, the Henney estate's claims against Hinkle Contracting were dismissed as settled.

**D.**

As a result, Plaintiffs filed this suit, seeking a declaratory judgment that Canal had a duty to defend Hinkle Contracting for the claims asserted in the Henney estate action (both the vicarious-liability and independent-misconduct claims) and that the LM and Liberty Mutual policies were excess to the Canal policy. Plaintiffs also sought reimbursement from Canal for the defense costs and expenses paid in defending the Henney estate action, along with prejudgment interest.

In January 2012, Plaintiffs filed a motion for summary judgment, arguing that Plaintiffs paid $421,925.51 in attorneys' fees and costs in defending the claims asserted against Hinkle Contracting. They sought a judgment in that amount plus prejudgment interest. On the same date, Canal cross-filed for partial summary judgment. While Canal conceded that it was liable for twenty-five percent

of Hinkle Contracting's valid defense costs and expenses incurred after June 7, 2010 (the date of Hinkle Contracting's tender), it sought summary judgment on the remainder of Plaintiffs' Claims.

The district court granted Liberty Mutual summary judgment. It found (1) Canal had the primary duty to defend Hinkle Contracting on both the vicarious-liability and independent-misconduct claims; (2) Canal's duty to defend began at the inception of the case; (3) Liberty Mutual was entitled to reimbursement of its defense costs; and (4) the defense costs incurred were liquidated damages and, therefore, an award of prejudgment interest was required. This appeal followed.

**II.**

There are three issues in this appeal. First, we must consider the extent of Canal's liability for Hinkle Contracting's defense costs under the terms of the Canal policy. Second, we must determine from what date Canal is responsible for Hinkle Contracting's defense costs. Third, we must decide whether the award of prejudgment interest by the district court was an abuse of discretion. We discuss each of these in turn, after outlining the standards of review and detailing the relevant provisions of the Canal policy.

**A.**

We review the district court's grant of summary judgment *de novo*. *Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 289 (6th Cir. 1999). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties agree that Kentucky law applies in this diversity case.

The interpretation of an insurance policy is a question of law appropriate for determination at the summary judgment stage. *Stone v. Ky. Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 810-11 (Ky. Ct. App. 2000). We will give the terms of an insurance policy their plain and ordinary meaning, and when the terms of the policy are clear and unambiguous, we must enforce them as drafted. *City of Louisville v. McDonald*, 819 S.W.2d 319, 320-21 (Ky. Ct. App. 1991); *Osborne v. Uniguard Indem. Co.*, 719 S.W.2d 737, 740 (Ky. Ct. App. 1986). We will interpret ambiguous terms in an insurance contract "in favor of the insured's reasonable expectations and construed as an average person would construe them . . . . Insurance policies should be construed according to the parties' mutual understanding at the time they entered into the contract, with this mutual understanding to be deduced, if at all possible, from the language of the contract itself." *Hugenberg v. W. Am. Ins. Co.*, 249 S.W.3d 174, 185-86 (Ky. Ct. App. 2006).

We review the district court's grant of prejudgment interest for an abuse of discretion. *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 274 (6th Cir. 2010). We will only reverse the district court if it applied an incorrect legal standard, misapplied the correct legal standard, or relied upon clearly erroneous findings of fact. *Getsy v. Mitchell*, 495 F.3d 295, 310 (6th Cir. 2007).

**B.**

This case revolves around the terms of the Canal policy. Therefore, we must take some care in detailing the relevant provisions. Near the beginning of the Canal policy's Coverage Form, it reads, "Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations." R. 21-3 at 41, Page ID # 907. Referring back to the policy declarations, Item One

of the Canal policy's "Common Policy Declarations" names "William Henderson DBA Henderson Trucking" as the "Named Insured." R. 21-3 at 1, Page ID # 868. Item One also provides a checkbox, which is followed by "For additional named insureds see IL 04 CW 0906." *Id.* The series of letters and numbers refers to a particular form, which presumably would be attached to the policy if additional named insureds were intended. The Canal policy does not include form IL 04 CW 0906.

Section II.A. of the Coverage Form, entitled "Liability Coverage," provides that "We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" *Id.* at 42, Page ID # 908. The plan also states that Canal has "the right and duty to defend any 'insured' against a 'suit' asking for such damages or a 'covered pollution cost or expense.'" *Id.* Section II.A.1. entitled "Who Is An Insured" reads as follows:

> The following are "insureds":
> a. You for any covered "auto".
> b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
> > (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own. . . .
> > (5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.
> c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

*Id.* at 42-43, Page ID ## 908-09.

Section IV.B.5., entitled "Other Insurance," states, "For any covered 'auto' you own, this Coverage Form provides primary insurance. For any covered 'auto' you don't own this Coverage Form is excess over any other collectible insurance." *Id.* at 49, Page ID # 931.

Finally, two endorsements are relevant to this appeal. The first, entitled "Designated Insured," "identifies . . . organization(s) who are 'insureds' under the Who Is An Insured Provision of the Coverage Form." The endorsement lists Henderson as the named insured and lists "Hinkle Contracting" under the heading "Name of Person(s) or Organization(s)." The premium for adding Hinkle Contracting is listed as $200. The endorsement ends with the following: "Each . . . organization shown in the Schedule is an 'insured' for Liability Coverage, but only to the extent that . . . organization qualifies as an 'insured' under the Who Is An Insured Provision contained in Section II of the Coverage Form." *Id.* at 53, Page ID # 919.

The second endorsement, entitled "Truckers Endorsement," adds two subsections to the Coverage Form. The endorsement adds subsection b.(6) to the Who Is An Insured Provision; the added subsection provides that "No coverage is afforded to any person, firm, or organization using the described 'auto' pursuant to any lease, contract of hire, bailment, rental agreement, or any similar contract or agreement either written or oral, expressed or implied." The endorsement also added subsection IV.B.5.e. to the Other Insurance Provision. The additional subsection states, "Regardless of the provisions of paragraph a. above, in the event the 'auto' described in this policy is being used or maintained pursuant to any lease, contract of hire, bailment, rental agreement, or any similar contract or agreement, either written or oral, expressed or implied, the insurance afforded you shall be excess insurance over any other insurance." *Id.* at 78, Page ID # 944.

**C.**

Turning to the extent of Canal's liability for Hinkle Contracting's defense costs, before delving into the contested issues in this case, it is worthwhile to detail what is not contested. First, the parties agree that the Liberty Mutual and LM policies provided Hinkle Contracting coverage on the vicarious-liability and independent-misconduct claims asserted in the Henney estate action and that the coverage provided would be excess to any other insurance. Second, the parties agree that the Canal policy provided Hinkle Contracting coverage on the vicarious-liability claims asserted in the Henney estate action.

The parties' dispute revolves around the extent of Hinkle Contracting's coverage under the Canal policy. To determine the scope of Hinkle Contracting's coverage under the Canal policy, we must consider whether the Canal policy was primary or co-excess over the vicarious-liability claim. We then must define "contract of hire" under the terms of the Canal policy. Finally, we must consider what does it mean to "use" a covered auto under the omnibus clause of the Canal policy. Before turning to these considerations, however, there is an initial hurdle: What type of insured is Hinkle Contracting under the terms of the Canal policy, i.e., is it a named insured or otherwise entitled to first-class coverage?

1.

The question is easily answered by turning to the relevant policy provisions of the Canal policy. To begin with, the "Common Policy Declarations" do not list Hinkle Contracting as a named insured; indeed, the form necessary for naming additional insureds is absent from the policy. Nor does the designated-insured endorsement add an additional subsection to the Who Is An Insured

Provision that would entitle Hinkle Contracting to first-class coverage. Further, the designated-insured endorsement listed Henderson as the named insured and ended with "[e]ach . . . organization shown in the Schedule is an 'insured' for Liability Coverage, but only to the extent that . . . organization qualifies as an 'insured' under the Who Is An Insured Provision contained in Section II of the Coverage Form." If Hinkle Contracting were supposed to be a named insured (i.e., a "you" under the Canal policy) or if Hinkle Contracting were otherwise entitled to first-class coverage, the qualifying language at the end of the Designated Insured endorsement would be superfluous. Because Hinkle Contracting is not a named insured or otherwise entitled to first-class coverage, it only qualifies for coverage to the extent that it meets the criteria under the omnibus (section II.A.1.b.) and vicarious-liability clauses (section II.A.1.c.) of the Canal policy.

2.

This definition of "you" quickly resolves the parties dispute over whether the Canal policy provided primary or co-excess coverage over the claims. The Other Insurance Provision states "for any covered 'auto' *you* own, this Coverage Form provides primary insurance." Because the claim arose from a covered auto owned by Henderson (i.e., "you") the coverage is primary.

Canal argues that the Section IV.B.5.e. of the Truckers Endorsement presents a wrinkle, but this argument quickly falls apart by looking to the plain terms of the policy. Just as it was above, the key is the word "you," in the phrase, "the insurance afforded *you* shall be excess." As was discussed above, Hinkle Contracting is not "you" under the terms of the policy. To determine otherwise would read an inconsistency into the policy: Hinkle Contracting would be a "you" under the "Truckers Endorsement" but not a "you" under the Who Is An Insured Provision. Section

IV.B.5.e. does not apply to Hinkle Contracting, and as a result, the Canal policy provided primary coverage for the Henney estate action.[1]

3.

Turning to whether this was a "contract of hire" under Section II.A.1.b(6), if the agreement between Hinkle Contracting and Henderson were a "contract of hire," then Hinkle Contracting would be entitled to no coverage under the omnibus clause. The Coverage Form does not define "contract of hire," and we have found no Kentucky or Sixth Circuit cases defining the term. Therefore, we have turned to the most relevant cases from other jurisdictions.

The most relevant cases involve two of the parties currently before this court and similar Truckers Endorsements. In *Liberty Mutual Fire Insurance Co. v. Canal Insurance Co.*, No. A.1:96cv261–D–D, 1997 WL 786760 (N.D. Miss. Nov. 13, 1997) and *Liberty Mutual Fire Insurance Co. v. Canal Insurance Co.*, 50 F. Supp. 2d 591 (S.D. Miss. 1998), the courts found that the term "contract of hire" as used in a Canal policy is an ambiguous term and then narrowly construed "contract of hire" in favor of the insured.

> It is plain from [the] definitions of "hire" that a contract of hire might be for *either* the use of a thing *or* for the labor or services of an individual. The question is whether the phrase *as used in the endorsement* is so broad. One reading, that of the defendant, is that it indeed means any sort of contract for hire. When looking to the context of the endorsement and in light of the policy as a whole, another more narrow reading of the term comes to light. In this vein, it is reasonable to read the provision as being satisfied only when "pursuant to any lease, contract of hire, bailment, rental agreement or any similar contract or agreement" *of the insured automobile.* This

---

[1]This creates a bit of an absurdity, as Canal points out: Hinkle Contracting, under the vicarious-liability clause, is seemingly entitled to more coverage than Henderson. However, as the drafter of the policy, the absurdity was within Canal's control.

would distinguish between the two types of contracts of hire—i.e., those for the use of a chattel and those for the personal services or labor of an individual.

*Liberty Mut. Fire Ins. Co.*, 1997 WL 786760, at \*6; *see also Liberty Mut. Fire Ins. Co.*, 50 F. Supp. 2d at 599 ("ATCO merely hired McConnell to perform a service, and the trucks were incidental to that service."), *aff'd* 177 F.3d 326 (1999).

An additional consideration persuades us to apply the narrow interpretation of "contract of hire." Before the issuance of the Canal policy in dispute, Canal was on notice that "contract of hire" could be interpreted in at least two different ways. *Liberty Mut. Fire Ins. Co.*, 1997 WL 786760, at \*6; *Liberty Mut. Fire Ins. Co.*, 50 F. Supp. 2d at 599, *aff'd* 177 F.3d 326. Canal chose not to eliminate the ambiguity.

Hinkle Contracting hired Henderson for his services—to haul aggregate—and his truck was incidental to that service. *See Liberty Mut. Fire Ins. Co.*, 1997 WL 786760, at \*6 (finding that defendant hauling lumber and lumber products was service and not contract of hire under similar truckers endorsement); *Liberty Mut. Fire Ins. Co.*, 50 F. Supp. 2d at 599 (finding that cutting trees and hauling lumber constituted service and not contract of hire under similar truckers endorsement). The arrangement was not a lease-type agreement by which Henderson was paid by the "amount of time the truck was used in the benefit of" Hinkle Contracting. *See Liberty Mut. Fire Ins. Co.*, 1997 WL 786760, at \* 6. This narrow interpretation avoids the unreasonable result that "a plethora of normally covered activities, if not the entire trucking operation of [Henderson], would be without primary coverage under the policy." *See Liberty Mut. Fire Ins. Co.*, 1997 WL 786760, at \* 6.

In light of these considerations, the covered auto was not being used pursuant to a "contract of hire," and as a result, section IV.B.5.e. does not apply to Hinkle Contracting. The only remaining question with regard to Hinkle Contracting's coverage under the Canal policy is whether Hinkle Contracting was "using" the vehicle when it was loading aggregate.

4.

The omnibus clause provides that Hinkle Contracting would be covered for the independent-misconduct claims asserted by the Henney estate if the loading and unloading of Henderson's vehicle constituted "using" the vehicle. Though the Kentucky courts do not appear to have considered whether "use" includes loading and unloading, "[t]he term 'use' is a broad catchall designed to include all uses of the vehicle not falling within the terms 'ownership' or 'maintenance,' and involves simply employment for the purposes of the user." 8A Couch on Ins. § 119:37. The term "extends to any activity in utilizing the insured vehicle in the manner intended or contemplated by the insured." *Id.* When an insurance plan is silent about whether unloading and loading are covered, courts have at times defined "use" to include loading and unloading. 8 Couch on Ins. § 111:38 n.2; *see also Am. Oil Co. v. Hardware Mut. Cas. Co.*, 408 F.2d 1365, 1367-68 (1st Cir. 1969).[2]

---

[2]Complicating the matter somewhat, the Kentucky's Motor Vehicle Reparations Act defines "use" to exclude loading and unloading. Ky. Rev. Stat. Ann. § 304.39-020. The Motor Vehicle Reparations Act requires Kentucky drivers to procure certain insurance and also establishes a right to basic reparation benefits for those who suffer loss from injury arising out of the maintenance or use of a motor vehicle. *Id.* §§ 304.39-010, .030. There is nothing in the statute, however, that would appear to require that the Canal policy must or should define "use" as it is defined in the statute. The terms of the insurance policy control, unless the terms contravene public policy. *Ky. Farm Bureau Mut. Ins. Co.*, 326 S.W.3d at 811. We see no principled basis to conclude that it would contravene public policy to define "use" to include loading and unloading on the facts of this case.

Canal cites *Hartford Ins. Co. of Am. v. Ky. Sch. Bds. Ins. Trust*, 17 S.W.3d 525, 527 (Ky. Ct.

The appellants cite *Kentucky Water Service Co. v. Selective Insurance Co.*, 406 S.W.2d 385 (Ky. Ct. App. 1966), as a case relevant to the determination of whether loading a vehicle constitutes "use." In that case, Jasper was a customer of Kentucky Water. He drove his truck into Kentucky Water's loading rack. Jasper placed a hose connected to an overhead pipe into his truck's tank. A Kentucky Water employee began pumping water into the hose. The hose detached from the overhead pipe and injured Jasper. Jasper sued Kentucky Water, and Kentucky Water then sought a declaration from the court determining Kentucky Water was an insured under the omnibus clause of Jasper's insurance policy because Kentucky Water was "using" the vehicle. *Id.* at 385.

The Kentucky Court of Appeals determined that Jasper's truck was under his exclusive control, and that the mere act of turning a water valve and allowing Jasper to use a hose did not constitute use of Jasper's vehicle. *Id.* at 387. This is a common-sense conclusion: "Jasper did not pay premiums to Selective so that it would insure third parties against his claim for damages." *Id.* The intent of the insured was of utmost importance. *See id.*

The Hauling Contract provided that Henderson was required to obtain an automobile insurance policy naming Hinkle Contracting as an insured on a primary and non-contributory basis. If Hinkle Contracting's intent was to carry out this contract provision, then "use" should be defined broadly to carry out his intent—to insure Hinkle Contracting on a primary basis—and as a result "use" would include loading and unloading the truck. Moreover, whereas in *Kentucky Water* Jasper

---

App. 1999), as a case that employed the Motor Vehicle Reparations Act definition of "use" when determining the scope of an insurance policy's coverage. The case is inapposite because that court did not consider whether the loading or unloading of the vehicle could constitute "use" within an insurance policy in spite of the Motor Vehicle Reparations Act. *See id.*

was a customer of Kentucky Water, which suggests that Kentucky Water was not using its truck, Henderson was working for Hinkle Contracting. Hinkle Contracting loaded Henderson's truck for Hinkle Contracting's purpose and at Hinkle Contracting's direction, which comports with our common understanding of "use."

The insurance plan is silent about whether "use" covers loading or unloading, but if anything, the silence creates ambiguity. To the extent there is ambiguity, we give the insured the benefit of the doubt. "Use" therefore includes loading and unloading.

Tying all of this together, the Canal policy covers both the vicarious-liability and independent-misconduct claims. Hinkle Contracting used the covered auto when it loaded aggregate, and the accident, as alleged in the Henney estate action, arose from that use. Thus, Hinkle Contracting is covered under the omnibus clause. Further, the Canal policy is primary because the action involved a vehicle owned by Henderson. Assuming there was effective notice, Canal had a "duty to defend [Hinkle Contracting] against a 'suit' asking for such damages." This segues us into the next issue for consideration.

**D.**

Liberty Mutual gave Canal notice of its intent to tender Hinkle Contracting's defense to Canal. Several months later, Canal informed Liberty Mutual that it would only accept a tender from Hinkle Contracting directly. Canal argues that it is only responsible for attorney fees incurred after Hinkle Contracting, through counsel, tendered its defense.

Kentucky courts have held that an insurance company is an agent of the insured during the course of litigation or anticipated litigation. *See, e.g.*, *Asbury v. Beerbower*, 589 S.W.2d 216 (Ky.

1979). In the present case, Plaintiffs tendered the defense "on behalf of Hinkle." This was enough for purposes of giving Canal notice.

**E.**

Finally, we must decide whether the district court abused its discretion when it awarded Liberty Mutual prejudgment interest. Under Kentucky law, a party is entitled to prejudgment interest when the award of damages is liquidated. *Nucor Corp. v. Gen. Elec. Co.*, 812 S.W.2d 136 (Ky. 1991). "Liquidated claims are of such a nature that the amount is capable of ascertainment by mere computation, can be established with reasonable certainty, can be ascertained in accordance with fixed rules of evidence and known standards of value, or can be determined by reference to well-established market values." *3d Enters. Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440, 450 (Ky. 2005) (internal quotation marks omitted). "[T]he key issue is whether the amount is fixed as between the parties to the litigation either by agreement or operation of law." *Travelers Prop. Cas. Co. of Am.*, 598 F.3d at 276. We added in *Travelers*:

> Travelers was not privy to the amounts Hillerich owed on its open account with its defense counsel prior to Travelers taking on the defense costs after the Second Amended Complaint was filed. Hillerich has offered no proof that Travelers knew or should have known of those amounts due, and so as between Travelers and Hillerich, the damages were not liquidated.

*Id.* The implication from the court's language in *Travelers* is that if a party were privy to the amounts owed, or if the parties should have known of the amounts owed, then finding that such fees are liquidated would not be an abuse of discretion.

The district court determined that the defense costs incurred by Liberty Mutual were liquidated because "[t]he amounts were invoiced, tendered to, and paid by Liberty Mutual pursuant

to its insurance contract with HCC." This alone would not have been enough for us to affirm the district court, because the district court failed to analyze whether Canal knew or should have known of the defense costs. However, the court clarified its consideration of the issue in its opinion and order denying Canal's motion to alter or amend. The court stated that "the defense costs should have been paid by Canal pursuant to Canal's contract with [Hinkle Contracting]. Canal cannot be allowed to shirk its duty to defend, then fail to make Liberty Mutual whole for the lost use of its due and payable money during the time required to secure ultimate judgment." The district court's statement implies that Canal should have known the amounts owed for Hinkle Contracting's defense—had Canal assumed the defense, as it should have done, it would have received the amounts invoiced, tendered to, and paid by Liberty Mutual. The district court therefore did not abuse its discretion when it awarded Liberty Mutual prejudgment interest.

## III.

For the foregoing reasons, we **AFFIRM** the decision of the district court.