187 So.2d 871 (1966)
MAVAR SHRIMP & OYSTER CO., Ltd.
v.
UNITED STATES FIDELITY & GUARANTY CO.
No. 44016.
Supreme Court of Mississippi.
June 13, 1966.
*872 Rushing & Guice, Biloxi, for appellant.
Morse & Morse, Gulfport, for appellee.
INZER, Justice.
Mavar Shrimp & Oyster Co., Ltd., a co-partnership, brought suit against United States Fidelity & Guaranty Co. in the Circuit Court of Harrison County, seeking to recover the sum of $3,351.50, alleging that this amount was paid by Mavar to defend and settle certain suits against it in the Federal District Court, It was also alleged that under the terms of an insurance policy issued to Mavar by United States Fidelity & Guaranty Co. the insurer had the duty to defend these suits, which it failed to do after due demand. The Insurance Company denied that the policy of insurance covered the loss, or that by the terms thereof it was obligated to defend these suits.
The pertinent facts are as follows. Steve Rodolfich, Jr. filed two suits, a civil suit and a suit in admiralty in the United States District Court, Eastern District of Louisiana, against United States Fidelity & Guaranty Co. and Mavar Shrimp & Oyster Co., Ltd., and two suits, a civil suit and a suit in admiralty in the United States District Court, Southern District of Mississippi, against certain parties doing business as Mavar Shrimp & Oyster Co., Ltd. In each of the four declarations it was alleged that Rodolfich was employed by Mavar on the shrimp boat "Ruth Friedhoff," and that the boat was owned pro hoc vice or chartered, operated and equipped by Mavar. It was further alleged that as a result of the orders of the captain to remove certain trawl boards from the boat to the wharf while the vessel was moored at the head of the pier of Mavar's wharf, Rodolfich sustained severe accidental injuries to his back. The Insurance Company and Mavar defended the Louisiana suits by separate counsel who collaborated in the defense. The Insurance Company knew that Mavar contended Rodolfich was not its employee, and that Mavar denied liability for this reason.
There was a question relative to the sufficiency of the process in the Louisiana suits, and they were dismissed before being tried. Mavar then called upon the Insurance Company to defend the Mississippi suites, but it refused to do so. Mavar defended *873 these suits and denied Rodolfich was its employee at the time he was injured. Due to the congested state of the docket in the District Court, trial of these cases was delayed. At a pre-trial conference, the district judge recommended that the suits be settled, and named a figure. Mavar refused to settle for the recommended amount, but finally did settle for $2,500. It is for this amount, together with the attorneys' fees and expenses, that Mavar filed this suit.
The policy of insurance which was in force at the time of the alleged injury was misplaced by Mavar, and the Insurance Company was unable to furnish a copy thereof. However, it is agreed that the policy in evidence in this case contains the same terms and conditions as did the policy that was actually in force. The issues were tried by the circuit judge without a jury, and he found that the policy did not cover the claim of Rodolfich. Judgment was entered dismissing the suit; hence, this appeal.
The question to be decided on this appeal involves a construction of the insurance policy. The policy is designated as a "Comprehensive General-Automobile Liability Policy," but by virtue of the declarations therein, covers not only automobiles and trucks owned by Mavar, but also covers the premise operations of Mavar, including the loading and unloading of fishing boats. The pertinent portions of the policy are:
INSURING AGREEMENTS:
I Coverage A  Bodily Injury Liability
To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.
II Defense, Settlements, Supplementary Payments
As respects the insurance afforded by the other terms of this policy the Company shall:
(a) defend any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;
* * * * * *
(c) pay all expenses incurred by the Company, all costs taxed against the Insured in any such suit and all interest accruing after entry of judgment until the Company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the Company's liability thereon;
(d) pay expenses incurred by the Insured for such immediate medical and surgical relief to others as shall be imperative at the time of the accident;
AMENDMENT OF COMPREHENSIVE GENERAL-AUTOMOBILE LIABILITY POLICY
It is agreed that the policy is amended as follows:
* * * * * *
2. Exclusion (c) is amended to read:
(c) under Coverage A, to any obligation for which the Insured or any company as his insurer may be held liable under any workmen's compensation law, or, except with respect to liability assumed under contract covered by this policy, to bodily injury to or sickness, disease or death of any employee of the Insured while engaged in the employment of the Insured, other than *874 a domestic employee whose injury arises out of an automobile covered by this policy and for whose injury benefits are not payable or required to be provided under any workmen's compensation law;
It is contended by Mavar that under the terms and conditions of the policy the Insurance Company had the duty to defend the suits filed against it by Rodolfich. This contention is based upon the ground that the Insurance Company knew that the allegations of Rodolfich were false and that he was not Mavar's employee. The Insurance Company contends that by the terms of the policy, its duty to defend depends entirely upon the allegations of the declarations filed by Rodolfich and these allegations brought the suit within the exclusions contained in the contract. It contends that the law announced in United States Fidelity & Guaranty Co. v. Cook, 181 Miss. 619, 179 So. 551 (1938) does not apply. There we held that although the declaration alleged that the person suing Cook was an employee, nevertheless, under that portion of the policy which obligated the insurance company to defend any suit against the insured even if such suit was groundless, false or fraudulent, obligated the insurance company to defend. It is urged that the terms of the policy are different, the difference being that this contract is qualified to require the Insurance Company to defend causes covered by the terms of the policy because of the words "as respects the insurance afforded by the other terms of this policy." This being true, it says that the allegations in the declarations of Rodolfich controlled its duty to defend. In support of this argument, it relies upon the cases of Commercial Casualty Insurance Co. v. Tri-State Transit Co., 190 Miss. 560, 1 So.2d 221, 133 A.L.R. 1510 (1941) and Southern Bureau Casualty Co. v. Logan, 238 Miss. 580, 119 So.2d 268 (1960), but the precise question here has not been decided by this Court. The question is whether the Insurance Company, under the terms of the policy here, has the duty to defend a case where the declaration alleges facts that do not come within the terms of the policy, but the insurer knows, or by means of an investigation ascertains, that the allegations are false. A study of the policy convinces us that it is ambiguous relative to this question. Since it is ambiguous, then the policy must be construed most strongly against the insurer and most favorably toward the insured. When it is so construed, we think that the fact that the Insurance Company knew that Mavar contended that Rololfich was not its employee and was fully advised that Mavar had been successful in maintaining in other cases that other persons in the same status as was Rodolfich were not its employees, obligated the Insurance Company to defend this suit.
In the case of Loftin v. United States Fire Insurance Co., 106 Ga. App. 287, 127 S.E.2d 53 (1962), the Georgia court had before it the same question involved here. It held that the contract was ambiguous as to the rights and duties of the insurer relative to a defense of a suit alleging untrue facts showing noncoverage when the known or ascertainable facts were within the coverage. The court said:
The defendant contends in effect that its obligation must depend uniformly on either the true facts or the allegations of the complaint, and that because the insurer is bound to defend a suit falsely alleging a claim covered by the policy, therefore it is excused from defending a suit alleging facts not covered, whether false or not. `The conclusion * * * is a non sequitur.' McGettrick v. Fidelity & Casualty Co. of New York, supra, [2 Cir.], 264 F.2d [883], 886. The duty to defend in the former instance is established by the undertaking to defend suits `even if * * * groundless, false, or fraudulent.' McGettrick v. Fidelity & Casualty Co. of New York, supra; Bloom-Rosenblum-Kline Co. v. Union Indemnity Co., supra [121 Ohio St. 220, *875 167 N.E. 884], London Guarantee & Accident Co. v. Shafer, supra [D.C., 35 F. Supp. 647]; Summer & Co. v. Phoenix Indemnity Co., supra [177 Misc. 887, 32 N.Y.S.2d 2]. The duty to defend in the latter instance arises from the undertaking `with respect to such insurance as is afforded by this policy' to defend any suit alleging personal injury, etc. This undertaking says nothing about the rights and duties of the parties in the event there is a variation between the allegations of the complaint showing an exception to coverage and the true facts. `It would seem, therefore, that it must have reference to objective facts.' McGettrick v. Fidelity & Casualty Co. of New York, supra [264 F.2d] 885. This policy cannot be construed to have intended other than that, when the insured in good faith complies with the terms of the policy requiring him to give notice to the insurer of claims and suits, the insurer undertakes to ascertain the true facts with respect to an alleged exclusion from coverage, and its duty to defend rests thereon. It would not be reasonable to say that it was the intention of the contracting parties, when the insured has given all notice and information required of him, that the assertions of a third party, a stranger to the contract, rather than the true facts, be allowed to determine the rights between the contracting parties, unless such an intention is clearly manifested by the terms of the contract, as in the undertaking to defend groundless suits. (106 Ga. App. at 295-296, 127 S.E.2d at 59.)
While there is authority to the contrary, we are of the opinion that if the obligation requiring the insurance company to defend suits that are groundless, false or fraudulent is to have any real meaning, then under the facts and circumstances of this case, the Insurance Company had the obligation to defend. If the Insurance Company had intended otherwise, it could have made its intent clear by stating that its obligation to defend was confined to those cases where the declaration alleges facts that come within the coverage of the policy.
It is contended by the Insurance Company that the proof does not show that Rodolfich was not an employee of Mavar. Suffice it to say that the only proof in the record does show that Rodolfich was not an employee of Mavar. In Crum v. Anchor Casualty Co., 264 Minn. 373, 119 N.W.2d 703 (1963), the court expressed the rule in its syllabus as follows:
Where complaint fails to state cause of action covered by policy, but insured informs insurer that true facts are inconsistent with complaint, or insured learns from independent investigation that the true facts, if established, present potential liability of insured, insurer must defend until it appears that facts upon which liability is predicated exclude insurance coverage. (119 N.W.2d at 703.)
If the Insurance Company had defended the suits, and it was established that the status of Rodolfich was an employee instead of an independent contractor or joint adventurer, then the Insurance Company would not have been liable for any judgment that Rodolfich would have recovered. However, we are not concerned with that question since the only proof in the record shows that Rodolfich was not an employee.
Having unjustifiably refused to defend, the Insurance Company is liable not only for the attorneys' fees, expenses, and court costs, but also for the amount of the settlement. The rule is as stated in 7A Appleman, Insurance Law and Practice section 4683 (1962): "If an insurer unjustifiably refuses to defend a suit, the insured may make a reasonable settlement or compromise of the injured person's claim, and then is entitled to reimbursement from the insurer, even though the policy purports to avoid liability for settlement made without insurer's consent."
*876 For the reasons stated, this case must be reversed and judgment entered here for the amount sued.
Reversed and judgment here for appellant.
GILLESPIE, P.J., and BRADY, PATTERSON, and SMITH, JJ., concur.