**CANAL INSURANCE COMPANY,**
**Plaintiff,**

v.

**T.L. JAMES & COMPANY, INC., Grinston Sand and Gravel Company, and Highlands Insurance Group, Defendants.**

Civ. A. No. 4:94CV52(L)(N).

United States District Court,
S.D. Mississippi,
Eastern Division.

June 23, 1995.

John W. Crowell, Gholson, Hicks & Nichols, Columbus, MS, for plaintiff.

William H. Creel, Jr., Philip W. Gaines, Currie, Johnson, Griffin, Gaines & Myers, Jackson, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Canal Insurance Company (Canal) filed this declaratory judgment action seeking an adjudication that it has no liability to defendant T.L. James & Company (James) under a certain policy of automobile liability insurance which Canal issued to Grinston Sand and Gravel Company (Grinston). James and its insurer, The Highlands Insurance Group (Highlands), counterclaimed alleging that James is an insured entitled to coverage under the policy and charging that Canal has denied coverage to James in bad faith. Canal has now moved for summary judgment, and James and Highlands have cross-moved for summary judgment. The court has reviewed the memoranda of authorities, together with attachments, submitted by the parties, and concludes that both motions should be granted in part and denied in part, as explained below.

James was hired by the State of Mississippi as the general contractor on a highway project in Lauderdale County. In October 1989, James subcontracted with Grinston for Grinston to furnish sand and gravel for the project. In the spring of 1992, after the work on the project was completed, Midway Mart, Inc., a convenience store located in the vicinity of the project, complained that trucks hauling sand and gravel had cut across its parking lot, causing damage for which compensation was sought. James notified Grinston of Midway's claim and demanded that Grinston or its liability carrier protect, and if necessary defend and indemnify James against Midway's claim. Canal declined.

Unable to obtain a satisfactory resolution of its claim, Midway filed suit against James and Grinston in the Circuit Court of Lauderdale County in September 1992 demanding recovery for the damage to its parking lot. Therein, it alleged that Grinston's trucks, "working under the direction and control of [James]," had "cut through" the parking lot, causing damage. James answered the complaint, denying liability to Midway, and filed a cross-claim against Grinston, alleging that it was entitled to indemnity from Grinston for any liability it might incur to Midway.[1]

---

1. Midway specifically pled that "[t]he defendants ... damaged [plaintiff's] property;" that "[t]he defendants were constructing ... and the defendants used ... part of the plaintiff's property in hauling dirt and topping;" that "[t]rucks belonging to ... [Grinston], working under the direction and control of ... [James] would cause their gravel trucks, hauling dirt and topping, to 'cut through' the [plaintiff's] parking lot;" that "[p]laintiff ... notified the defendants that their trucks were hauling dirt and topping over plaintiff's property and ... defendants deliberately ignored the plaintiff;" that "[d]efendants were well aware of the damages which they were causing;" and that "[James] informed the plaintiff that they would, before leaving the vicinity, repair the plaintiff's damages." From these allegations, it is not clear whether Midway contend-

Thereafter, Midway amended its complaint to allege that trucks owned by James also cut across its parking lot, and thus contributed to the damage.

Upon being notified of the Midway suit by Grinston, Canal retained counsel to defend its insured, Grinston, against the complaint and cross-claim. James also demanded that Canal provide it with a defense to the action, asserting that it, too, was an insured under the Canal policy. However, Canal denied James' request for a defense. Faced with Canal's refusal to accept its tender of defense, James' liability insurer, Highlands, retained counsel to represent James in the Midway suit. The case was tried, resulting in a directed verdict for James at the close of Midway's case, and a jury verdict for Grinston.

Canal filed the present declaratory judgment action alleging that James is not an insured under the terms of the policy. As indicated, James and Highlands have counterclaimed contending not only that James is an insured such that it was entitled to a defense in the Midway suit, but also that Canal acted in bad faith in refusing to recognize James' status as an insured.

Initially, the court would observe that any issue that may have existed in this action relating to Canal's obligation to indemnify James has been rendered moot by virtue of the fact that the Midway action was resolved in favor of James. The issue remaining is whether Canal had a duty to defend James. The answer to this question turns on whether James was an insured under the policy. It is undisputed that James was not a named insured; the only named insured was Grinston. But did James otherwise qualify as an insured? For the reasons that follow, this court concludes that James was indeed an insured, so that Canal had a duty to provide it with a defense in the Midway suit. Canal breached that duty. The court is not persuaded, however, that Canal lacked an arguable basis for its denial. Accordingly, the court concludes that Canal is liable for the costs incurred in connection with James' defense to the Midway lawsuit, but is not liable for punitive or extra-contractual damages.

### The Coverage Issue: Was James an Insured?

In its policy, Canal agreed as follows:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use ... of an owned automobile ... and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such ... property damage.

Section III of the policy, entitled "persons insured," included in the category of "insureds" not only "[t]he named insured," Grinston, but also "[a]ny other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a). . . ." Because Midway clearly alleged that James was vicariously liable for Grinston's acts, or, to use the language of the policy, that it was liable "because of acts or omissions of an insured," James is plainly included with the definition of "persons insured." [2] Canal, though, argues that an exclusionary endorsement to the policy, identified as the "Truckman's Endorsement," operates to eliminate any potential coverage for James. That endorsement states:

ed that trucks belonging to both Grinston and James had crossed its parking lot. It was clear, though, that Midway sought to hold James vicariously liable for damage alleged to have been done by Grinston's trucks.

2. The court would clarify that James does not contend that it was an insured under the Canal policy as to Midway's claim that James was itself negligent by allowing its own trucks to cross over Midway's parking lot. However, so long as any claim is potentially within the coverage of a policy, the duty to defend arises, even if there are other claims that are not covered. *See Equal Employment Opportunity Comm'n v. Southern Publishing Co., Inc.*, 894 F.2d 785 (5th Cir.1990). Thus, if Midway's claims based on James' alleged vicarious liability was covered, or potentially covered, then the fact that Midway also asserted claims relating to James' own negligence would not diminish Canal's duty to defend.

In consideration of the premium charged for the policy to which this endorsement is attached, it is understood and agreed that *no coverage is extended to any person, firm or organization using the described motor vehicle pursuant to any lease, contract of hire,* bailment, rental agreement or similar contract or agreement, either written or oral, expressed or implied, the terms and provisions of the Insuring Agreement III of Section A, entitled "Persons Insured" notwithstanding. (Emphasis added).

In the event the automobile described in this policy is being used or maintained pursuant to any lease, contract of hire, bailment, rental agreement or similar contract or agreement, either written or oral, expressed or implied, the insurance afforded the named insured shall be excess over any other insurance....

The determinative question, then, is whether James was "using the described motor vehicle pursuant to any lease, contract of hire ... or any similar contract or agreement." Canal's argument that the truckman's endorsement applies is grounded on its assertion that James had leased Grinston's trucks, coupled with an interpretation of the truckman's endorsement which equates the term "used" with "directed" and/or "controlled." Canal acknowledges that Midway charged James with vicarious liability for Grinston's trucks. But it reasons that if Grinston was, in fact, subject to James' direction and control such that James could be held vicariously liable, then James was necessarily "using" the trucks. On the other hand, if James did not direct and control the trucks, then it could not be held liable. Either way, it was not covered.

 The determination of whether Canal had a duty to defend depends on the proper interpretation of the insurance contract. Insurance policies are to be construed in accordance with certain well-established rules of insurance contract interpretation. *Smith v. McDonough,* 758 F.Supp. 397 (S.D.Miss.), *aff'd,* 947 F.2d 1486 (5th Cir. 1991); *Western Line Consolidated School Dist. v. Continental Cas. Co.,* 632 F.Supp. 295 (N.D.Miss.1986). Mississippi's law rec-ognizes the general rule that provisions of an insurance contact are construed strongly against the drafter. Consistent with this principle, insuring clauses are construed broadly to effect coverage, and exclusionary clauses that restrict coverage are construed narrowly against the insurer. So, to benefit from an exclusionary provision in an insurance contract, the insurer must show that the exclusion applies and that it is not subject to any other reasonable interpretation that would afford coverage. *Nationwide Mut. Ins. Co. v. Garriga,* 636 So.2d 658 (Miss. 1994). The court must strive to give effect to the parties' intention, as expressed by the plain language of the policy, but where the are two or more reasonable interpretations of a clause, the court will adopt the interpretation that provides coverage. *Nationwide Mut. Ins. Co. v. Garriga,* 636 So.2d 658 (Miss.1994). Moreover, any doubt as to the existence of a defense obligation is likewise resolved in favor of the insured. *Rhodes v. Chicago Ins. Co.,* 719 F.2d 116 (5th Cir.1983).

Canal's position in this case proceeds from the premise that there was a "lease, or contract of hire" for the trucks. By its terms, the endorsement applies only if the use of the vehicle was pursuant to a "lease, contract of hire, bailment, rental agreement or similar contract or agreement." Thus, unless there was a lease or contract of hire, Canal cannot correctly invoke the exclusion. On this point, Canal asserts, without explication, that the agreement between James and Grinston, "although styled a subcontract, appears to contemplate merely the use of Grinston's vehicles for the purposes of hauling sand and gravel to the project." The court, however, finds no support for this position in the terms of the subcontract. To the contrary, the agreement, by its terms, appears, instead, to contemplate James' purchase of sand and gravel from Grinston, and the delivery thereof. Thus, James did not lease Grinston's trucks. Moreover, James did not contract to hire Grinston's drivers. It simply subcontracted with Grinston, which provided its own drivers to do its own work in the performance of its subcontract, and which operated its own trucks at all times by its own employees. Clearly, this endorsement was not in-

tended to apply to situations when the named insured is using its own trucks in furtherance of its own business, providing its own drivers and materials. For these reasons, the endorsement is inapplicable.

■ While the foregoing reasons are sufficient to rule the exclusion inapplicable, there are additional reasons for this conclusion. In arguing against coverage, Canal urges what it characterizes as a "broad interpretation" of the term "using" in the truckman's endorsement. Canal specifically argues that this term has been and should be "broadly" construed to encompass not only actual physical use and possession of the subject vehicle but also the right to direct and control the vehicle. It reasons, then, that if James, in fact, had the right to direct and control Grinston's trucks, then James was "using" the trucks and coverage would be excluded. On the other hand, if James did not direct and control Grinston's trucks, then it could not be held vicariously liable.

In *Auto–Owners (Mutual) Insurance Co. v. L.P. Cavett Co.*, 882 F.2d 1111 (7th Cir. 1989), the one case cited by Canal to support this interpretation of the endorsement, the court held that an omnibus clause which extended coverage to anyone "legally responsible for the use of" the vehicle in question did not require that someone actually or actively physically use the vehicle to qualify as an insured; rather, it extended coverage to any person or organization that "had some measure of control over the vehicle which subjected it to potential liability for actions related to the actual operation of the vehicle." *Id.* at 1114. *Auto–Owners* is inapposite, however, for the provision at issue there was a coverage clause, a broad reading of which is justified by the rules of contract construction the court has already identified. In contrast, the truckman's endorsement involved in this case is an exclusionary provision which is to be narrowly construed against the insurer.

James disputes Canal's proposed interpretation of the endorsement, and, in reliance on a number of cases in which courts have applied Canal's endorsement, argues that it applies only in situations where, by agreement, the person or organization "using" the automobile has actual physical possession of the vehicle, or furnishes all materials, supplies and loads. Indeed, in *Canal Insurance Co. v. Warren*, 496 F.Supp. 1301 (E.D.Mo. 1980), Canal's insured leased his rig and supplied a driver to a trucking firm for its use in hauling. Though the lessor, lessee and driver were all "persons insured" under the policy, the court concluded that the endorsement excluded coverage for the lessee and driver since the truck, at the time of the accident, was being used by the lessee pursuant to the lease. Likewise, in *Vance Trucking Co. v. Canal Insurance Co.*, 395 F.2d 391 (4th Cir.1968), an accident occurred involving a truck with driver leased by Canal's insured to another company for that company's use in hauling commodities for its customers. In considering the issue of Canal's insurance coverage, the court, after quoting the truckman's endorsement, concluded that because the driver "was operating the accident vehicle pursuant to the lease agreement," neither he nor the lessee was covered by the Canal policy. In each of those cases, the truckman's endorsement was applied to exclude coverage for the companies which had actually leased the vehicle to do their own hauling. That fact distinguishes those cases from this one since James did not lease Grinston's trucks.[3]

Moreover, the courts in those cases did not consider the issue presented here, whether this endorsement applies to exclude coverage to one who has directed and controlled, or has the right to direct and control the movement of the vehicle, but who has not either physically operated the vehicle or actually leased the vehicle for its own use. Indeed, neither party has identified any case that has decided this issue. This court, though, is persuaded that the term "using" in this exclusion, while not necessarily limited to actual physical operation of the vehicle (i.e., driving), is appropriately read as requiring more

---

**3.** In *Canal Insurance Co. v. Earnshaw*, 629 F.Supp. 114 (D.Kan.1985), another case cited by James, the policy involved did include the truckman's endorsement. However, because the court concluded that the party at issue was not included in the policy's definition of "persons insured," it did not consider the truckman's endorsement.

**230**

than just the ability to direct and control the vehicle. Of course, even if the term "using" could reasonably be defined to include "some measure of control over the vehicle," *Auto–Owners,* 882 F.2d at 1114, because the term can just as reasonably, if not more reasonably, be interpreted as requiring something more than just the ability to direct and control the vehicle, it follows that the truckman's endorsement must be so construed.

 For the foregoing reasons, the court concludes that James was a "person insured" under Canal's policy, and further, that the truckman's endorsement does not apply. It follows that Canal had a duty to defend James in the Midway suit. Having failed to perform that duty, it is therefore liable for damages incurred by James, and by Highlands in the defense of the suit.

### Was Canal Guilty of Bad Faith?

James demands an award of punitive damages and extra-contractual (consequential) damages, contending that Canal's repeated refusal to acknowledge coverage and assume James' defense in the state court action was without a legitimate or arguable basis. In support of its "bad faith" claim, James argues that Canal not only denied coverage in disregard of the clear provisions of its policy and asserted specious arguments to avoid its obligations under the policy, but that it also withheld the policy from James so as to prevent James discovering its entitlement to coverage. The court has considered James' claim, and finds that punitive damages should not be awarded. Though the court has rejected Canal's interpretation of the policy, as well as the conclusions which Canal urges from the facts, the court is not persuaded that Canal's arguments in support of its position were so far beyond the range of reasonableness as to warrant the conclusion that it did not have an arguable reason for contesting coverage. *See Blue Cross & Blue Shield of Miss., Inc. v. Campbell,* 466 So.2d 833, 842 (Miss.1984) (plaintiff has heavy burden to show insurer had no reasonably arguable basis for denying the claim).

Further, while there is proof that Canal, following a request by James for a copy of the policy, did delay furnishing the policy, the court cannot say that this delay of a month-and-a-half to two months was malicious, or grossly unreasonable so as to justify consideration of an award of punitive damages.

Finally, as this court interprets Mississippi law, from the conclusion that Canal had an arguable basis for contesting coverage, it follows that James' claim for extracontractual damages must be rejected. *See Necaise v. U.S.A.A. Cas. Co.,* 644 So.2d 253 (Miss.1992); *Universal Life Ins. Co. v. Veasley,* 610 So.2d 290, 295 (Miss.1992); *see also Hans Constr. Co. v. Phoenix Assur. Co.,* 995 F.2d 53 (5th Cir.1993).

Based on the foregoing, it is ordered that the motion of James and Highland is granted as it pertains to Canal's breach of its duty to defend, and the motion of Canal for summary judgment is granted as it relates to James' claim for punitive and extra-contractual damages.