Revised June 14, 1999

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-60236

_____

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

Plaintiff-Appellee,

versus

CANAL INSURANCE COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court for
the Southern District of Mississippi

_____

May 26, 1999

Before KING, Chief Judge, REAVLEY and BENAVIDES, Circuit Judges.

REAVLEY, Circuit Judge:

In this insurance coverage dispute, plaintiff-appellee Liberty Mutual Fire Insurance

Company ("Liberty Mutual") sued defendant-appellant Canal Insurance Company ("Canal")

seeking, *inter alia*, (1) a declaratory judgment that Canal breached its duty to defend Anderson-

Tully Company ("ATCO") in an underlying lawsuit arising from an automobile accident, and (2)

recovery of the reasonable attorneys' fees and expenses incurred in defending ATCO in the

underlying litigation, the amount paid to settle the claims against ATCO before trial, and

prejudgment interest. Canal responded by (1) asserting that ATCO was not an insured under the Canal policy, alternatively, that any coverage for ATCO was excess to the primary coverage provided by Liberty Mutual, and that the Liberty Mutual policy provided primary or co-primary coverage for J. W. McConnell ("McConnell")[1] and Wilmer D. Wilson ("Wilson"), the two other defendants in the underlying lawsuit, and (2) seeking recovery of the attorneys' fees and expenses incurred in the defense of McConnell and Wilson in the underlying suit, the amount of the judgment paid by Canal on behalf of McConnell and Wilson, and prejudgment interest. Considering cross-motions for summary judgment, the district court granted summary judgment for Liberty Mutual and against Canal on all issues and awarded damages to Liberty Mutual, which included the attorneys' fees and expenses incurred to defend ATCO, the settlement amount paid on behalf of ATCO, and prejudgment interest thereon from the date of each payment. We agree with the holdings on the policy coverages and affirm Liberty Mutual's recovery of its fees and expenses paid to defend ATCO. We modify the judgment, however, to eliminate the recovery by Liberty Mutual of the amount it paid to settle the claims against ATCO, because that settlement was not causally connected to Canal's breach of its duty to defend ATCO.

I. FACTUAL & PROCEDURAL BACKGROUND

McConnell is a contract logger whose business entails cutting trees, converting them into forest products, and transporting logs to his customers' sawmills. ATCO is in the business of lumber production and operates several sawmills. In April 1993, McConnell and ATCO entered into a Cutting and Hauling Agreement (the "Agreement"), whereby McConnell agreed to "furnish

---

[1] J. W. McConnell is also known as Billy McConnell and has done business as Billy McConnell Trucking Company and McConnell Logging. He will be referred to throughout this opinion as simply "McConnell."

2

and provide all labor, tools, materials and equipment for the cutting and converting in[to] sawtimber and other products, all trees that have been designated by Anderson-Tully for such purposes" and "to cut, process, load, transport and deliver" such products to ATCO sawmills or log dumps. Under the terms of the Agreement, ATCO had the right to inspect McConnell's operations to ensure compliance with the Agreement; but ATCO had no right to control the time, manner, or method by which McConnell fulfilled his obligations under the contract and had no right to select or control the activities of McConnell's employees. The Agreement did not require McConnell to use any particular vehicle to fulfill the contractual transportation and delivery obligations. Nor did it entitle ATCO to use or operate any vehicles owned by McConnell or to select the delivery routes taken by McConnell or his employees. During the relevant time period, Canal provided $300,000 of primary and excess automobile liability insurance to McConnell in connection with McConnell's logging business. Likewise, Liberty Mutual provided ATCO with $1,000,000 of business automobile liability coverage.

This dispute stems from an August 1993 accident in which Wilson, a McConnell employee, negligently collided with a vehicle driven by Jane Love ("Love"), killing Love and seriously injuring her husband Homer Love. At the time of the accident, Wilson was driving a McConnell truck hauling an empty trailer on his way to pick up a load of timber to deliver to ATCO's sawmill pursuant to the Agreement. Love's beneficiaries and Homer Love filed a wrongful death and negligence suit against Wilson, McConnell, and ATCO (the "*Carlock* litigation" or the "*Carlock* plaintiffs"). The *Carlock* plaintiffs alleged that both McConnell and ATCO had a master-servant relationship with Wilson and were therefore liable for Wilson's negligence. Liberty Mutual demanded that Canal defend and indemnify ATCO under the Canal

3

policy asserting that the claim brought ATCO under the policy's definition of an "insured" because the *Carlock* complaint alleged that ATCO was vicariously liable for Wilson's negligence. Canal refused, asserting that ATCO was using the McConnell truck pursuant to a lease or contract of hire, and therefore the E-45 Truckman's Endorsement attached to the Canal policy excluded coverage for ATCO. Additionally, Canal asserted that the Liberty Mutual policy provided coverage for McConnell and Wilson and demanded that Liberty Mutual provide their defense. Liberty Mutual denied Canal's request.

Canal defended McConnell and Wilson in the *Carlock* litigation and attempted to settle the suit by offering its combined $300,000 policy limit. The *Carlock* plaintiffs, however, were unwilling to settle the suit for this amount. Liberty Mutual undertook ATCO's defense and moved for summary judgment, asserting that McConnell was an independent contractor and therefore ATCO was not liable for the negligence of Wilson, McConnell's employee, because there was no master-servant relationship. After the motion for summary judgment was denied, Liberty Mutual negotiated and settled the claims against ATCO for $112,500 in order to reduce its potential liability for a verdict in excess of Canal's $300,000 policy limit. The parties agree that, even assuming the Canal policy provided primary coverage for ATCO, the Liberty Mutual policy provided excess coverage and consequently, Liberty Mutual would be obligated to pay on behalf of ATCO any adverse judgment in excess of $300,000, up to the stated Liberty Mutual policy limit. McConnell and Wilson proceeded to trial and were found liable for damages in excess of $513,000, for which Canal paid its full policy limits, leaving those defendants liable for the excess.

Liberty Mutual, as equitable subrogee, filed the instant action against Canal for breach of

4

its duty to defend ATCO, seeking, *inter alia*, the attorneys' fees and expenses incurred in the defense of ATCO, the $112,500 it paid to settle the *Carlock* litigation, and prejudgment interest thereon from the date each payment was made. Canal counter-claimed, asserting that Liberty had breached its duty to defend McConnell and Wilson and sought to recover, *inter alia*, the attorneys' fees and expenses incurred in the defense of McConnell and Wilson, the amount paid as a result of the judgment against McConnell and Wilson, and prejudgment interest thereon. Considering cross-motions for summary judgment, the district court held that (1) ATCO was insured under the Canal policy and was not using the McConnell truck pursuant to a lease, contract of hire, or similar agreement; (2) Liberty Mutual had no duty to defend McConnell and Wilson under its policy; (3) as a result of its breach of the duty to defend ATCO, Canal was liable for the attorneys' fees and defense costs incurred by Liberty Mutual, as well as the $112,500 paid to settle the claims against ATCO; and (4) Liberty Mutual was entitled to prejudgment interest from the date each payment was made. Canal appeals each of these rulings. For the reasons discussed below, we reverse that portion of the judgment awarding the $112,500 to Liberty Mutual and affirm the judgment as modified.

## II. ANALYSIS

A.     *Standard of Review*

We review the district court's summary judgment ruling *de novo*, applying the same standard as the district court.[2] Summary judgment is proper if, viewing the summary judgment record in the light most favorable to the nonmovant, there is no genuine issue of material fact and

---

[2] *See Davidson v. Glickman*, 169 F.3d 996, 998 (5th Cir. 1999).

5

the moving party is entitled to judgment as a matter of law.[3]  In this case, there are no disputed

factual issues, only questions of law concerning the interpretation of the Canal and Liberty Mutual

insurance contracts, which we review *de novo*.[4]

In this diversity action, we look to Mississippi law for the legal standards governing

insurance contract interpretation.  The applicable principles are succinctly set forth in *Canal*

*Insurance Company v. T.L. James & Company, Inc.*[5]

> Mississippi's law recognizes the general rule that provisions of an insurance
> cont[r]act are construed strongly against the drafter.  Consistent with this
> principle, insuring clauses are construed broadly to effect coverage, and
> exclusionary clauses that restrict coverage are construed narrowly against the
> insurer.  So, to benefit from an exclusionary provision in an insurance contract, the
> insurer must show that the exclusion applies and that it is not subject to any other
> reasonable interpretation that would afford coverage.  *Nationwide Mut. Ins. Co. v.*
> *Garriga*, 636 So. 2d 658 (Miss. 1994).  The court must strive to give effect to the
> parties' intention, as expressed by the plain language of the policy, but where
> the[re] are two or more reasonable interpretations of a clause, the court will adopt
> the interpretation that provides coverage.  *Nationwide Mut. Ins. Co. v. Garriga*,
> 636 So. 2d 658 (Miss. 1994).  Moreover, any doubt as to the existence of a
> defense obligation is likewise resolved in favor of the insured.  *Rhodes v. Chicago*
> *Ins. Co.*, 719 F.2d 116 (5th Cir. 1983).[6]

B.      *Canal's Duty to Defend ATCO*

Canal had a duty to defend ATCO in the *Carlock* litigation under the terms of the policy

issued to McConnell.  Under the general insuring provision, Canal is obligated to defend an

insured against suits arising from the ownership, maintenance, or use of a covered automobile

---

[3]  *See* FED. R. CIV. PROC. 56(c); *Davidson*, 169 F.3d at 998.

[4]  *See Gulf States Ins. Co. v. Alamo Carriage Serv.*, 22 F.3d 88, 90 (5th Cir. 1994).

[5]  911 F. Supp. 225 (S.D. Miss. 1995).

[6]  *Id.* at 228; *see also Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382-83 (5th Cir. 1998).

6

during the policy term and to pay damages on the insured's behalf up to the stated policy limits.[7]

There is no dispute that the truck driven by Wilson was a covered automobile under the Canal

policy or that the suit arose from the use of a covered automobile. ATCO also falls within the

policy's definition of an insured. Section III defines the "PERSONS INSURED" to include the

named insured—*i.e.*, McConnell—and those employees using a covered auto with

permission—*e.g.*, Wilson—as well as "[a]ny other person or organization but only with respect to

his or its liability because of acts or omissions" of the named insured, partners or executives, or

permissive users.[8] Because the *Carlock* complaint alleged that ATCO was liable for the

---

[7] The Canal policy provides in relevant part:

[Canal] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use . . . of an owned automobile . . . and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage . . . , but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

R. Vol. I at 8.

[8] The relevant policy provision states:

III. PERSON INSURED. Each of the following is an insured under this insurance to the extent set forth below:
(a)     the named insured;
(b)     any partner or executive officer thereof . . .;
(c)     any other person while using an owned automobile . . . with the permission of the named insured . . . ;
(d)     any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a), (b) or (c) above.

R. Vol. I at 8.

7

negligence of Wilson—a permissive user—ATCO clearly falls within the last category of persons insured.

Canal, however, asserts that an exclusionary endorsement, the E-45 Truckman's Endorsement, applies to exclude coverage for ATCO. The Truckman's Endorsement excludes coverage for "any person, firm or organization using the described motor vehicle pursuant to any lease, contract of hire, bailment, rental agreement or similar contract or agreement."[9] According to Canal, ATCO was "using" the truck driven by Wilson pursuant to the Cutting and Hauling Agreement, which Canal contends is a "contract of hire" or similar agreement within the meaning of the Truckman's Endorsement.[10] Because the term "contract of hire" is not defined in the

---

[9] The full text of the E-45 Truckman's Endorsement attached to the Canal Policy provides:

> In consideration of the premium charged for the policy to which this endorsement is attached, it is understood and agreed that *no coverage is extended to any person, firm or organization using the described automobile pursuant to any lease, contract of hire, bailment, rental agreement, or any similar contract or agreement* either written or oral, expressed or implied, the terms and provisions of the Insuring Agreement of Section A, entitled "Persons Insured" notwithstanding.

> In the event the automobile described in this policy is being used or maintained pursuant to any lease, contract of hire, bailment, rental agreement or any similar contract or agreement, either written or oral, expressed or implied, the insurance afforded the named insured shall be excess insurance over any other insurance.

R. Vol. I at 14 (emphasis added).

[10] Because we conclude that the Cutting and Hauling Agreement was not a contract of hire within the meaning of the Truckman's Endorsement, we need not and do not address Canal's argument that the district court erred in concluding that ATCO was not "using" the McConnell truck pursuant to a contract of hire or similar agreement. Additionally, although Canal also argued to the district court that the Cutting and Hauling Agreement constituted a "lease" of the McConnell truck, Canal has since abandoned that argument on appeal.

8

policy, under Mississippi law the term must be given its plain and common, everyday meaning.[11]

To support its argument, Canal relies on the dictionary definition of the word "hire" and essentially asserts that the term "contract of hire" as used in the endorsement, includes any contract for labor or services. For example, Black's Law Dictionary defines the word "hire" to mean "to arrange for the labor or services of another for a stipulated compensation."[12] Accordingly, Canal urges that because ATCO arranged for the services of McConnell for a stipulated compensation, the Cutting and Hauling Agreement constitutes a "contract of hire" within the meaning of the E-45 endorsement, thereby triggering the exclusion. The district court rejected such a broad interpretation relying on *Canal Insurance Company v. T.L. James & Company, Inc.*, 911 F. Supp. 225 (S.D. Miss. 1995); *Canal Insurance Company v. Liberty Mutual Insurance*, 395 F. Supp. 962 (N.D. Ga. 1975); and *Casino Air Charter, Inc. v. Sierra Pacific Power Company*, 596 P.2d 496 (Nev. 1979). We agree with the holdings of those courts and of the district court here.

In *T.L. James & Company*, Canal provided automobile liability insurance to Grinston Sand and Gravel Company ("Grinston"). Grinston entered into a subcontract with T.L. James & Company ("James"), the general contractor on a highway project, whereby Grinston agreed to furnish sand and gravel for the project. An adjacent business owner sued Grinston and James for property damage caused by Grinston's trucks. Because Canal refused to defend James, The Highlands Insurance Group ("Highlands"), James's automobile liability insurance carrier,

---

[11] *See Aero Int'l, Inc. v. United States Fire Ins. Co.*, 713 F.2d 1106, 1109 (5th Cir. 1983); *McFarland v. Utica Fire Ins. Co.*, 814 F. Supp. 518, 525 (S.D. Miss. 1992), *aff'd*, 14 F.3d 55 (5th Cir. 1994); *Benton v. Canal Ins. Co.*, 130 So. 2d 840, 846 (Miss. 1961).

[12] BLACK'S LAW DICTIONARY 729 (6th ed. 1990).

9

defended James. After the trial, Canal brought a declaratory action against Highlands, asserting that an identical E-45 Truckman's Endorsement excluded coverage for James because the subcontract with Grinston constituted a "contract of hire." Highlands counter-claimed, asserting that Canal breached its duty to defend James. The court agreed with Highlands and rejected Canal's argument that the subcontract was a "contract of hire" of Grinston's trucks, which triggered the E-45 exclusion. The court explained:

> Canal asserts, without explication, that the agreement between James and Grinston, "although styled as a subcontract, appears to contemplate merely the use of Grinston's vehicles for the purposes of hauling sand and gravel to the project." The court, however, finds no support for this position in the terms of the subcontract. To the contrary, the agreement, by its terms, appears, instead, to contemplate James' purchase of sand and gravel from Grinston, and the delivery thereof. Thus, James did not lease Grinston's trucks. Moreover, James did not contract to hire Grinston's drivers. It simply subcontracted with Grinston to do its own work in performance of its subcontract, and which operated its own trucks at all times by its own employees. Clearly, this endorsement was not intended to apply to situations when the named insured is using its own trucks in furtherance of its own business, providing its own drivers and materials. For these reasons, the endorsement is inapplicable.[13]

Other jurisdictions have also rejected Canal's broad interpretation. In *Canal Insurance Company v. Liberty Mutual Insurance*,[14] the same parties disputed whether a harvesting contract similar to the Cutting and Hauling Agreement at issue here constituted a "contract of hire" triggering the E-45 exclusionary endorsement. In that case, Townsend had a service contract with Union Camp, whereby Townsend agreed to harvest and cut pulpwood on Union Camp's land and to deliver it to Union Camp's plant. West, a Townsend employee, was involved in a car accident while driving a Townsend truck and performing under the agreement. Canal provided

---

[13] *T.L. James & Co., Inc.*, 911 F. Supp. at 228-29.

[14] 395 F. Supp. 962 (N.D. Ga. 1975).

automobile liability insurance to Townsend and Liberty Mutual insured Union Camp. Canal

refused to defend Union Camp based on the E-45 endorsement and defended Townsend and West

under a reservation of rights. At issue was whether Canal or Liberty Mutual was liable for the

coverage and defense of the driver West. Canal argued that West was not insured under its policy

because he was using the truck pursuant to a "contract of hire." The court rejected this argument

and instead embraced Liberty Mutual's position that "the E-45 endorsement refers only to a

contract or agreement which relates specifically to the 'described automobile' in question."[15]

Noting that, among other things, the contract at issue was for labor and services in which the

Townsend truck was used only incidentally, Townsend had total control over his employees and

the equipment used to fulfill the contract, and Union Camp paid no fees for the truck, the court

held that the harvesting agreement between Townsend and Union Camp was not a contract of

hire.[16]

     *Casino Air Charter, Inc. v. Sierra Pacific Power Company*,[17] in the context of an airplane

crash, considered whether a charter service had "hired" the aircraft. In that case, Sierra Pacific

Power Company ("Sierra") arranged a charter flight with Casino Air Charter for a government

employee. During the flight, the plane crashed, killing the pilot and passenger. The passenger's

estate sued Sierra, Casino Air Charter, and the pilot's estate. Casino Air Charter demanded

coverage under Sierra's liability policy as an additional insured, asserting that Sierra had "hired"

the airplane. The court rejected this argument, stating:

---

[15] *Id.* at 971; *see id.* at 974.

[16] *See id*. at 972-74.

[17] 596 P.2d 496 (Nev. 1979).

In the instant case, there was no hiring of an aircraft. Instead, Sierra contracted for the transportation services of an airplane and a qualified pilot. Sierra neither designated a particular aircraft nor took any part in the preparation of a flight plan.[18]

The above cases all support the conclusion that the Cutting and Hauling Agreement was not a contract of hire of McConnell's truck within the meaning of the E-45 Endorsement. This contract for logging and transportation services is not a "contract of hire" of the McConnell truck since it is not similar to a lease, bailment, or rental agreement of a vehicle as contemplated by the endorsement. Although it incidentally contemplated the use of a vehicle in order for McConnell to fulfill his contractual obligations, the Agreement does not require McConnell to use any particular vehicle and did not entitle ATCO to operate, direct, or control any of McConnell's vehicles or drivers. And while ATCO selected the final delivery destinations, ATCO had no right under the Agreement to select the route taken by McConnell or his employees to deliver the timber products. We also reject Canal's assertion that this case is analogous to *Wallace v. Boyte Enterprises, Inc*,[19] which held that an exclusionary provision essentially identical to the E-45 endorsement excluded coverage for Boyte, a materialman that contracted with a truck owner to provide a truck and driver for an hourly fee. On the contrary, the Cutting and Hauling Agreement at issue here was unlike an arrangement to provide a truck and driver to ATCO for an hourly fee.

Finally, while we agree with the general proposition that words, terms and phrases that are not expressly defined in insurance policies must be given their plain and common, everyday

---

[18] *Id.* at 499.

[19] 385 So. 2d 916, 918 (La. Ct. App. 1980).

meanings, the interpretation urged by Canal myopically focuses on the word "hire" and takes the term "contract of hire" completely out of context. The endorsement excludes coverage for any person or business that uses "*the described automobile* pursuant to any lease, contract of hire, bailment, rental agreement, or any similar contract or agreement." When viewed in context, each of these terms—lease, contract of hire, bailment, and rental agreement—plainly contemplates a contract or agreement that specifically governs *the described automobile*. Hence, a "contract of hire" as used here cannot be construed as a broad reference to any contract for labor or services. Moreover, as noted above, we are required by Mississippi law to construe the Truckman's Endorsement narrowly against Canal.[20] In sum, we agree with the district court's conclusion that the Cutting and Hauling Agreement simply does not constitute a contract of hire within the meaning of the Truckman's Endorsement.

C.    *Coverage for McConnell and Wilson under the Liberty Mutual Policy*

We also agree with the district court's ruling that Liberty Mutual had no duty to defend McConnell and Wilson under the terms of the Liberty Mutual policy. The relevant insuring provision is Section II - Liability Coverage, which provides:

> **A.    COVERAGE**
> We will pay all sums an **insured** legally must pay as damages because of **bodily injury** or **property damage** to which this insurance applies, caused by an **accident** and resulting from the ownership, maintenance or use of a covered **auto**.
>
> * * *
>
> **1.    WHO IS AN INSURED**
> The following are **insureds**:
> **a.**    You for any covered **auto**.

---

[20]  *See Nationwide Mut. Ins. Co. v. Garriga*, 636 So. 2d 658, 662 (Miss. 1994).

13

**b.** Anyone else while using with your permission a covered **auto** you own, hire or borrow . . . .

**c.** Anyone liable for the conduct of an **insured** described above but only to the extent of that liability.[21]

Canal first asserts that the McConnell truck is a "covered auto" under the Liberty Mutual policy because the policy defines covered autos to include "any auto." Canal next contends that Wilson qualifies as an insured under subsection 1(b) because he was using, with ATCO's permission, a covered auto hired by ATCO. As for McConnell, Canal claims that he is an insured under subsection 1(c) because the *Carlock* plaintiffs sought to hold McConnell liable for the conduct of Wilson, a Liberty Mutual insured under coverage 1(b). Whether or not the McConnell truck is a "covered auto" under the Liberty Mutual policy, the dispositive issue is whether McConnell or Wilson qualify as an "insured." Because, as explained above, ATCO did not own, hire, or borrow the McConnell truck, Wilson does not meet the definition of an insured under subsection 1(b). Consequently, McConnell does not meet the definition of an insured under subsection 1(c). Therefore, the district court properly concluded that the Liberty Mutual policy afforded no coverage to Wilson or McConnell.[22]

Alternatively, Canal argues that, as to McConnell and Wilson, its policy is excess to or co-

---

[21] R. Vol. I at 70-71.

[22] Canal's reliance on *Taylor v. United States Fidelity & Guaranty Insurance Company*, 630 So. 2d 237 (La. 1993), is misplaced. *Taylor* construed a similar policy provision, which defined an "insured" to include anyone other than the named insured, who used a vehicle that was owned, hired, or borrowed by the named insured with the named insured's permission. In *Taylor*, M-B Lumber Company hired a tractor that was owned and operated by Rollins. A coverage dispute ensued after Rollins was involved in an accident. There was no dispute that M-B Lumber Company had hired the Rollins tractor. The only issue was whether the tractor was a "covered auto" under the policy. Because the policy defined a "covered auto" to include "any auto," the court held that Rollins was an insured under M-B Lumber Company's policy. *See id.* at 240-41. *Taylor* is inapposite to the instant case, however, since ATCO did not hire the McConnell truck.

14

primary with the Liberty Mutual policy. Canal points to the "Other Insurance" clauses contained

in both policies and argues that because each policy absent the other would provide coverage to

McConnell and Wilson, the "rule of repugnancy" applies to negate both "other insurance" clauses

and consequently each policy must provide coverage on a pro-rata basis. The rule of repugnancy

provides that if there is a conflict in the "other insurance" or excess clauses of two policies, which

standing alone would provide primary coverage to the insured, the clauses are mutually repugnant

and are to be disregarded.[23] As we have explained above, Wilson and McConnell were not

insureds under the Liberty Mutual policy, and it cannot be said that this policy, standing alone,

would provide primary coverage for Wilson and McConnell. We do not reach the rule of

repugnancy.

D.    *Recovery of Settlement Costs*

After granting summary judgment in favor of Liberty Mutual, the district court awarded

Liberty Mutual not only its costs to defend ATCO in the *Carlock* litigation, but also the $112,500

paid to settle the claims against ATCO before trial, plus prejudgment interest thereon. The

district court rejected Canal's argument that it was not liable for the settlement costs because it

had tendered its policy limits and because the settlement on behalf of ATCO was not proximately

caused by the breach of its duty to defend ATCO. We agree with Canal that Liberty Mutual's

decision to settle on behalf of ATCO in order to avoid the risk of liability for an excess judgment

did not result from Canal's breach. The district court erred in allowing Liberty Mutual to recover

the settlement costs.

In Mississippi, and as a general rule, an insurer's wrongful refusal to defend an insured

---

[23]  *See Allstate Ins. Co. v. Chicago Ins. Co.*, 676 So. 2d 271, 275 (Miss. 1996).

renders it liable for any damages sustained *as a result* of the breach of contract.[24] These damages include reasonable attorneys' fees, costs, expenses, *and* the negotiated or adjudicated amount of the claim.[25] Generally, if the insurer has acted in good faith, it is not liable for any amount beyond the stated policy limit. With respect to excess judgments, an insurer is not liable for the amount in excess of the policy limit so long as the insurer has not acted in bad faith and has not wrongfully refused to settle the claim within its policy limits.[26] The rationale is that the excess judgment was not caused by either a breach of the duty to defend or a breach of the duty to settle. That is, the insurer's defense of the insured would not have prevented a judgment in excess of the policy limit. Similarly, if the claim cannot be settled within the policy limit, the insurer's breach of its duty to settle in good faith is not the cause of any excess judgment. The same general rule applies with respect to settlements, *i.e.*, in the absence of bad faith, an insurer is not liable for the amount of any settlement by the insured beyond the stated policy limit.[27] In the present case there are no allegations that Canal acted in bad faith.

---

[24] *See, e.g.*, *Brickell v. United States Fire Ins. Co.*, 436 So. 2d 797, 801 (Miss. 1983) (citing *Southern Farm Bureau Cas. Ins. Co. v. Logan*, 119 So. 2d 268, 272 (Miss. 1960)); *see generally* 7C JOHN ALAN APPLEMAN, INSURANCE LAW & PRACTICE § 4689 (1979 & Supp. 1998).

[25] *See Mavar v. Shrimp & Oyster Co. v. United States Fidelity & Guar. Co.*, 187 So. 2d 871, 875 (Miss. 1966) (holding breaching insurer liable not only for defense costs, but also for settlement agreement made by the insured as a result of the breach); 7C APPLEMAN, *supra* note 24, § 4689, at 208-09.

[26] *See Employer's Nat'l Ins. Corp. v. Zurich Am. Ins. Co.*, 792 F.2d 517, 520-21 (5th Cir. 1986) (applying Texas law and reasoning that there was no "causal connection between the action of the insurer and . . . judgment in excess of policy limits"); *Fidelity & Cas. Co. v. Gault*, 196 F.2d 329, 330 (5th Cir. 1952) (applying Mississippi law); 1 ALLAN D. WINDT, INSURANCE CLAIMS & DISPUTES § 4.36, at 264 (3d ed. 1995).

[27] *See generally* 7C APPLEMAN, *supra* note 24, § 4690.

There are a few limited exceptions where an insurer has been held liable for consequential damages in excess of the stated policy limit where those damages resulted directly from the insurer's wrongful conduct.[28]  For example, if the insurer leads the insured to believe he will provide a defense, but does not, the insurer may be liable for a default judgment entered in excess of the policy limits.[29]  Also, if an insurer wrongfully withdraws from the defense too close to trial such that the insured is precluded from providing an adequate defense, the insurer may be liable for an excess judgment.[30]  The dispositive issue then is whether the settlement resulted from or was caused by Canal's breach of its duty to defend ATCO.

Canal argues that Liberty Mutual's settlement of the claims against ATCO was not caused by its breach.  Accordingly, Canal asserts that even if it had defended ATCO, Liberty Mutual would still have been faced with paying any judgment in excess of $300,000 if ATCO was found liable to the *Carlock* plaintiffs.  Essentially, Canal asserts that Liberty Mutual was simply protecting its own interests by settling the claim because Liberty Mutual knew that the *Carlock* plaintiffs would not accept Canal's $300,000 policy limit to settle the suit and acknowledged that it would be potentially liable for any excess judgment should its independent contractor defense fail at trial.  We agree.  The fact that Liberty Mutual settled the claim to eliminate its exposure for a potential excess judgment is evidenced by the February 9 letter from the Liberty Mutual claims specialist to ATCO, which provides in pertinent part:

---

[28]  *See generally* 1 WINDT, *supra* note 26, § 4.36, at 264-67.

[29]  *See id.* (citing *Gray v. Grain Dealers Mut. Ins. Co.*, 684 F. Supp. 1108, 1111-13 (D.D.C. 1988), *aff'd*, 871 F.2d 1128 (D.C. Cir. 1989)).

[30]  *See id.* (citing *Leader Nat'l Ins. Co. v. Smith*, 339 S.E.2d 321, 331 (Ga. Ct. App. 1985)).

As you may know the automobile liability carrier for McConnell, Canal Insurance Company, has tendered their [*sic*] $300,000 policy limits to the Court. *However, the plaintiffs are demanding an additional $350,000 for a total settlement of both cases for $650,000, which is in my judgment, the top value of a jury verdict.*

While we have maintained that McConnell was an independent contractor cutting and hauling timber on behalf of [ATCO] in accordance with a written contract, the plaintiffs have alleged that [ATCO] exercised control over McConnell's timber cutting operation and that McConnell was therefore acting in a master/servant relationship as opposed to an independent contractor. Unfortunately, our MOTION FOR SUMMARY JUDGMENT on this issue was overruled by Judge Bramlette, which means that the matter becomes a fact issue to be decided by the jury unless of course the judge reconsiders the matter at the end of the plaintiff's [*sic*] case and grants [ATCO] a directed verdict. *It is my opinion that we do have some exposure and we should negotiate a settlement if possible up to $150,000.*

Within the next few days, I plan to negotiate up to $100,000 to determine if the plaintiff will negotiate from his present demand of $350,000. If not, we will proceed with the trial and continue to evaluate our position during the course of the trial.[31]

It is clear from this letter that regardless of whether Canal undertook the defense of ATCO, Liberty Mutual's decision to settle was based upon its potential exposure for a judgment in excess of $300,000 in the event ATCO's independent contractor defense failed at trial. Even if Canal had defended ATCO, it is undisputed that the *Carlock* plaintiffs were unwilling to settle within Canal's policy limit. Thus, the settlement costs were not caused by Canal's refusal to defend ATCO, and the district court erred in allowing Liberty Mutual to recover such costs.

In so holding, we reject Liberty Mutual's argument that under Mississippi law, an insurer that breaches its duty to defend is liable for *any reasonable settlement*, irrespective of the policy limit. Liberty Mutual relies primarily on language from *Mississippi Insurance Guaranty*

---

[31] R. Vol. II at 450 (emphasis added).

18

*Association v. Byars*,[32] stating "it has long been established that when an insurer breaches its duty to defend an insured, the insurer is liable and bound by *any* settlement agreement made by the insured as a result of this breach."[33]  In Liberty Mutual's view, because Canal has not contended that the settlement was unreasonable, it is entitled to full recovery.  However, neither *Byars* nor any of the other cases cited by Liberty Mutual considered the issue of an insurer's liability for settlement costs in excess of the applicable policy limit.[34]  Moreover, as recognized in *Byars*, it is well established under Mississippi law that damages, including reasonable settlement costs, are recoverable only if they are caused by or result from the insurer's breach of its duty to defend.[35]

We are likewise unpersuaded by Liberty Mutual's argument that once Canal breached the insurance contract, it effectively waived its ability to invoke the policy limits provision.  For this

---

[32]  614 So. 2d 959 (Miss. 1993).

[33]  *Id.* at 964 (emphasis added); *see also Mavar Shrimp & Oyster Co. v. United States Fidelity & Guar. Co.*, 187 So. 2d 871, 875 (Miss. 1996) (holding that an insurer that unjustifiably refuses to defend a suit will be liable for a reasonable settlement made by the insured).

[34]  In addition to *Byars*, Liberty Mutual cites several cases for the proposition that Mississippi law allows recovery of *any* reasonable settlement, regardless of the applicable policy limit.  *See Liberty Mut. Ins. Co. v. United States Fid. & Guar. Ins. Co.*, 756 F. Supp. 953 (S.D. Miss. 1990); *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 601 F. Supp. 286 (S.D. Miss. 1984); *Mavar Shrimp & Oyster Co.*, 187 So. 2d at 875; *Southern Farm Bureau Cas. Ins. Co. v. Logan*, 119 So. 2d 268 (Miss. 1960). However, none of these cases considered an insurer's liability for settlement costs in excess of its policy limits.  Moreover, none of these cases addressed the principal issue here—whether there is causal connection between Canal's breach and Liberty Mutual's settlement on behalf of ATCO.

[35]  *See, e.g.*, *Byars*, 614 So. 2d at 964 ("[I]t has long been established that when an insurer breaches its duty to defend an insured, the insurer is liable and bound by any settlement agreements made by the insured *as a result of the breach*." (emphasis added) (citing *Mavar Shrimp & Oyster Co.*, 187 So. 2d at 875)); *Logan*, 119 So. 2d at 272 (stating that "the unjustifiable refusal to defend . . . renders [the] insurer liable to the insured for all damages resulting *as a result of the breach*" (emphasis added)).

19

proposition, Liberty quotes language from *Jones v. Southern Marine & Aviation Underwriters, Inc.*,[36] stating that insurers that breach their duty to defend waive their right to rely on policy provisions that preclude liability for a settlement agreement. Neither *Jones*, nor any other authority cited by Liberty Mutual has held that an insurer that wrongfully refuses to defend an insured waives the policy limits provisions such that it would be liable for settlement costs or other consequential damages that were not caused by its breach.

E.    *Prejudgment Interest*

Canal also challenges the award of prejudgment interest to Liberty Mutual. The district court awarded prejudgment interest on the attorneys' fees, expenses, and settlement costs from the date each payment was made. In diversity cases, issues of prejudgment interest are governed by state law.[37] We review the award of prejudgment interest for an abuse of discretion.[38] "Under Mississippi law, prejudgment interest may be allowed in cases where the amount due is liquidated when the claim is originally made or where the denial of a claim is frivolous or in bad faith."[39] In *Canal Insurance Company v. First General Insurance Company*,[40] we held that a district court has discretion under Mississippi law to award prejudgment interest to the prevailing insurer in a coverage dispute on amounts paid on behalf of the insured for state court judgments and

---

[36]  888 F.2d 358, 363 (5th Cir. 1989).

[37]  *Canal Ins. Co. v. First Gen. Ins. Co.*, 901 F.2d 45, 47 (5th Cir. 1990).

[38]  *See Hans Constr. Co. v. Drummond*, 653 So. 2d 253, 264 (Miss. 1995) ("An award of prejudgment interest rests in the discretion of the awarding judge." (quoting *Warwick v. Matheney*, 603 So. 2d 330, 342 (Miss. 1992)).

[39]  *Id.* (quoting *Warwick v. Matheney*, 603 So. 2d 330, 342 (Miss. 1992)).

[40]  901 F.2d 45 (5th Cir. 1990).

20

settlements from the date those amounts were paid. We reasoned that "these sums were clearly liquidated when paid" and although prejudgment interest is not mandated, "the district court would be acting within the discretion contemplated by Mississippi law if it awarded interest on such amounts from the dates they were paid."[41] Following *First General Insurance Company*, we conclude that the district court did not abuse its discretion by awarding prejudgment interest on amounts paid by Liberty Mutual on behalf of ATCO from the date the payments were made since those sums were clearly liquidated when paid. Of course, in light of our holding that Liberty Mutual is not entitled to recover its settlement payment, we affirm the award of prejudgment interest only with respect to the award of attorneys' fees and defense expenses.

F.     *Liberty Mutual's Motion to Strike Certain Depositions*

Also before this court is Liberty Mutual's motion to strike the depositions of McConnell, Wilson, and Mike Harrington (ATCO's corporate designee), attached as exhibits to Canal's Motion for Summary Judgment, and all references to such depositions in Canal's appellate brief. These depositions were taken in connection with the *Carlock* litigation and concerned the business relationship between McConnell and ATCO, McConnell's description of his business, and ATCO's description of its business. Because we have ruled in favor of Liberty Mutual on all issues other than the right to recover settlement costs paid on behalf of ATCO and because Canal's motion for summary judgment did not rely on these depositions with respect to that issue, Liberty Mutual's motion to strike is DENIED as moot.

### III.  CONCLUSION

For the foregoing reasons, we REVERSE only that portion of the judgment that awards

---

[41] *Id.* at 47.

Liberty Mutual the $112,500.00 paid to settle the claims against ATCO in the underlying *Carlock* litigation and prejudgment interest thereon of $27,594.54. Accordingly, we MODIFY [42] the judgment to reduce Liberty Mutual's damages award to $38,237.41 for attorneys' fees and expenses incurred in the defense of ATCO, and prejudgment interest of $10,230.47 calculated from the date of each payment, for a total sum of $48,467.88, together with all costs of court and interest until finally paid consistent with 28 U.S.C.A. § 1961.

AFFIRMED as MODIFIED.

---

[42] *See, e.g.*, *Lowe v. Southmark Corp*., 998 F.2d 335, 338 (5th Cir. 1993) (modifying district court's award of liquidated damages and affirming judgment as modified); *Carroll v. General Accident Ins. Co. of Am.*, 891 F.2d 1174, 1177 (5th Cir. 1990) (vacating award of pain and suffering damages and punitive damages and affirming district court's judgment as modified).